FEDERAL TRADE COMMISSION *v.* MARY
CARTER PAINT CO. ET AL.

No. 15. Argued October 21, 1965.—Decided November 8, 1965.

*Nathan Lewin* argued the cause for petitioner. With
him on the briefs were *Solicitor General Marshall, Ralph
S. Spritzer, James McI. Henderson* and *Charles C.
Moore, Jr.*

*David W. Peck* argued the cause and filed a brief for
respondents.

MR. JUSTICE BRENNAN delivered the opinion of the
Court.

Respondent Mary Carter Paint Company [1] manufac-
tures and sells paint and related products. The Federal
Trade Commission ordered respondent to cease and desist
from the use of certain representations found by the
Commission to be deceptive and in violation of § 5 of

---

[1] Hereinafter Mary Carter or respondent.

the Federal Trade Commission Act, 38 Stat. 719, as amended, 52 Stat. 111, 15 U. S. C. § 45 (1964 ed.). 60 F. T. C. 1830, 1845. The representations appeared in advertisements which stated in various ways that for every can of respondent's paint purchased by a buyer, the respondent would give the buyer a "free" can of equal quality and quantity. The Court of Appeals for the Fifth Circuit set aside the Commission's order. 333 F. 2d 654. We granted certiorari, 379 U. S. 957. We reverse.

Although there is some ambiguity in the Commission's opinion, we cannot say that its holding constituted a departure from Commission policy regarding the use of the commercially exploitable word "free." Initial efforts to define the term in decisions [2] were followed by "Guides Against Deceptive Pricing." [3] These informed business-men that they might advertise an article as "free," even though purchase of another article was required, so long as the terms of the offer were clearly stated, the price of the article required to be purchased was not increased, and its quality and quantity were not diminished. With spe-cific reference to two-for-the-price-of-one offers, the Guides required that either the sales price for the two be "the advertiser's usual and customary retail price for the single article in the recent, regular course of his busi-ness," or where the advertiser has not previously sold the article, the price for two be the "usual and customary" price for one in the relevant trade areas. These, of

---

[2] *Book-of-the-Month Club, Inc.*, 48 F. T. C. 1297 (1952); *Walter J. Black, Inc.*, 50 F. T. C. 225 (1953); *Puro Co.*, 50 F. T. C. 454 (1953); *Book-of-the-Month Club, Inc.*, 50 F. T. C. 778 (1954); *Ray S. Kalwajtys*, 52 F. T. C. 721, enforced, 237 F. 2d 654 (1956).

[3] Guides Against Deceptive Pricing, Guide V, adopted October 2, 1958, 23 Fed. Reg. 7965; see also policy statement, December 3, 1953, 4 CCH Trade Reg. Rep. ¶ 40,210. For the current guide, Guide IV, effective January 8, 1964, see 29 Fed. Reg. 180.

course, were guides, not fixed rules as such, and were designed to inform businessmen of the factors which would guide Commission decision. Although Mary Carter seems to have attempted to tailor its offer to come within their terms, the Commission found that it failed; the offer complied in appearance only.

The gist of the Commission's reasoning is in the hearing examiner's finding, which it adopted, that

> "the usual and customary retail price of each can of Mary Carter paint was not, and is not now, the price designated in the advertisement [$6.98] but was, and is now, substantially less than such price. The second can of paint was not, and is not now, 'free,' that is, was not, and is not now, given as a gift or gratuity. The offer is, on the contrary, an offer of two cans of paint for the price advertised as or purporting to be the list price or customary and usual price of one can." 60 F. T. C., at 1844.

In sum, the Commission found that Mary Carter had no history of selling single cans of paint; it was marketing twins, and in allocating what is in fact the price of two cans to one can, yet calling one "free," Mary Carter misrepresented. It is true that respondent was not permitted to show that the quality of its paint matched those paints which usually and customarily sell in the $6.98 range, or that purchasers of paint estimate quality by the price they are charged. If both claims were established, it is arguable that any deception was limited to a representation that Mary Carter has a usual and customary price for single cans of paint, when it has no such price. However, it is not for courts to say whether this violates the Act. "[T]he Commission is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act." *Federal Trade Comm'n* v. *Colgate-Palmolive Co.,* 380 U. S. 374,

385. There was substantial evidence in the record to support the Commission's finding; its determination that the practice here was deceptive was neither arbitrary nor clearly wrong. The Court of Appeals should have sustained it. *Federal Trade Comm'n* v. *Colgate-Palmolive Co., supra; Carter Products, Inc.* v. *Federal Trade Comm'n,* 323 F. 2d 523, 528.

The Commission advises us in its brief that it believes it would be appropriate here "to remand the case to it for clarification of its order." The judgment of the Court of Appeals is therefore reversed and the case is remanded to that court with directions to remand to the Commission for clarification of its order.

*It is so ordered.*

Mr. Justice Stewart took no part in the decision of this case.

Mr. Justice Harlan, dissenting.

In my opinion the basis for the Commission's action is too opaque to justify an upholding of its order in this case. A summary discussion of the facts and Commission proceedings will suffice to show why I cannot subscribe to the majority's disposition.

Since 1951 the enterprise now known as Mary Carter Paint Company has been manufacturing paint products for direct distribution through its own outlets and franchised dealers. For most or all of this period, its practice has been to establish its prices on a per-can basis but to give each customer a second can without further charge for each can purchased. Mary Carter's advertisements, while disclosing that the first can of each pair must be bought at the listed price, have always described the second can as "free"; typical slogans are: "Buy one get one free" and "Every second can free." It is this advertising which the Commission now condemns as unfair and

deceptive under § 5 of the Federal Trade Commission Act, as amended, 52 Stat. 111, 15 U. S. C. § 45 (1964 ed.).

To the extent that the Commission's order may rest on the proposition that the second can is not "free" because its receipt is "tied" to the purchase of the first can, it is manifestly inconsistent with the rules governing use of the word "free" maintained by the Commission for over a decade. No one suggests that the additional can of Mary Carter paint is free in the sense that no conditions are attached to its receipt, but the FTC forsook this commercially unrealistic definition in 1953. In that year, first by its decision in *Walter J. Black, Inc.,* 50 F. T. C. 225, and then a general policy statement, 4 CCH Trade Reg. Rep. ¶ 40,210, it sanctioned use of the word "free" to describe an item given without extra charge on condition of another purchase so long as the condition was plainly stated and the "tying" product was not increased in price for the occasion or decreased in quantity or quality. The FTC prefaced these rules in *Black* by saying that "[t]he businessmen of the United States are entitled to a clear and unequivocal answer" and it represented that its new position would be maintained until either Congress or the courts decided otherwise. 50 F. T. C., at 232, 235.

There is presently no charge by the Commission that Mary Carter failed to comply with this general statement which continued in force through the proceedings and decision affecting Mary Carter. Rather, for the greater period of its advertising operations Mary Carter could properly claim to have relied on the FTC's official pronouncement while it was establishing its "every second can free" slogan in the public mind, an investment now seemingly lost. Without inflexibly holding the Commission to its promise and avowed position, certainly solid justification should be demanded before the courts agree

that this departure is not "arbitrary, capricious, [or] an abuse of discretion." Administrative Procedure Act § 10 (e), 60 Stat. 243, 5 U. S. C. § 1009 (e) (1964 ed.).

At the very least the Commission should be required to demonstrate real deception and public injury in a decision that allows the courts to evaluate its reasoning and businessmen to comply with assurance with its latest views; these standards are not met by the FTC's opinion in this case. The Department of Justice suggests that the FTC regards the advertisements as implying that Mary Carter regularly sells its paint for the present per-can price without giving an extra can free;[1] from this premise, it might be argued, the buyer may then conclude that each can of Mary Carter is the equal of similarly priced rivals with whom it has regularly competed on equal terms in the past, making the present "free" can offer appear an excellent bargain. But the advertising in the present case does not really suggest that the "free" can is a departure from Mary Carter's usual pricing policy. Certainly nothing in any of the publicity states that the extra can is a "new" bargain or asserts that the opportunity may lapse in the near future. To the contrary, a number of Mary Carter advertisements, not separately treated by the Commission, affirmatively suggest that the extra-can offer has been and will continue to be

---

[1] Such an implication might be thought to run counter to the spirit of the now-superseded Guide V, Guides Against Deceptive Pricing, 23 Fed. Reg. 7965 (1958), requiring that the sales price for two articles in a two-for-the-price-of-one sale must be the usual and customary price for one. Mary Carter can, of course, reasonably claim to have complied with the letter of Guide V; assuming that it is making a two-for-the-price-of-one offer in substance, the advertised sum is the usual and customary price which a purchaser has to pay in order to acquire a single can. There is evidence that on at least a few occasions customers took only one can, paying the advertised per-can price. There is no evidence that Mary Carter permitted or tolerated sales of single cans at less than the advertised per-can price.

the sales policy. Far from trying to imply that its extra-can offer represents a temporary saving for the customer, Mary Carter has striven over a number of years to associate itself irrevocably in the public mind with the notion that every second can is free; the catchphrase appears in one form or another in nearly all the ads before us and is even imprinted on the top of Mary Carter paint cans. Finally, it is not without irony that the Commission, presumably seeking to protect the consumer from any unfounded ultimate conclusions that a can of Mary Carter is as good as its high-priced rivals, rejected an offer of proof from the company that a single can of Mary Carter is scientifically equal or superior to the leading paints that sell at the same per-can price level without giving bonus cans. Actually, there is no suggestion that any volume of consumer complaints has been received, which further deepens the mystery why this frail proceeding was ever initiated.[2]

The temptation to gloss over the analytical failings of the rationale now asserted for the FTC by relying on agency expertise must be short-lived in this case. Any findings by the FTC as to what the public may conclude from particular phrasings are most inexplicit, no distinction is taken between the various ads in question, and the conduct proscribed is never sharply identified. Surely there can be no resort to uninvoked expertise to buttress an unarticulated theory.

The opaqueness of the Commission's opinion and order makes their approval difficult for yet other reasons. The

---

[2] I put aside the argument that might arise from Mary Carter's practice of selling its paint in both gallon and quart cans. Conceivably, one might order a gallon and receive an unneeded extra gallon, never realizing that two quarts purchased plus two quarts free could be had for a smaller sum. The FTC ignored and the Government expressly disclaims reliance on any such argument. Moreover, many ads seem to give both quart and gallon prices.

bite of the FTC decision is in its order, which even the Commission recognizes to be unclear; how the Commission order can be upheld before this Court is told what exactly it means is indeed a puzzling question. Additionally, by failing to spell out its rationale the FTC decision breeds the suspicion that it is not merely *ad hoc* [3] but quite possibly irreconcilable with the *Black* case seemingly reaffirmed by the Commission in this very proceeding. If the Commission is able to write an opinion and order that can cure these defects and draw the plain distinctions necessary to assure fair warning and equal treatment for other advertisers, it has not done so yet.

In administering § 5 in the context of the many elusive questions raised by modern advertising, it is the duty of the Commission to speak and rule clearly so that law-abiding businessmen may know where they stand. In proscribing a practice uncomplained of by the public, effectively harmless to the consumer, allowed by the Commission's long-established policy statement, and only a hairbreadth away from advertising practices that the Commission will continue to permit, I think that the Commission in this instance has fallen far short of what is necessary to entitle its order to enforcement.

For these reasons I would not disturb the judgment of the Court of Appeals setting aside the Commission's order.

---

[3] Of the post-1952 cases cited in the majority's note 2 (*ante*, p. 47), none is authority for condemning Mary Carter's advertising. *Puro Co.*, 50 F. T. C. 454 (1953), and *Ray S. Kalwajtys*, 52 F. T. C. 721, enforced, 237 F. 2d 654 (1956), both involved plain deceptions as to the usual prices of the items in question. *Book-of-the-Month Club, Inc.*, 50 F. T. C. 778 (1954), and the *Black* case both exculpate sellers under the rule finally appearing in the 1953 policy statement, with whose terms Mary Carter has complied.