**LIPPA'S, INC.**

v.

**LENOX, INCORPORATED.**

Civ. A. No. 5346.

United States District Court
D. Vermont.

Sept. 30, 1969.

tail jewelry and gift dealer, against Lenox, Inc., a manufacturer and distributor of china dinnerware. The action was instituted on September 13, 1968, and service was made on the Vermont Secretary of State in accordance with 12 V.S.A. §§ 855, 856 (Supp.1969). On October 7, 1968, defendant filed a motion to dismiss on the grounds that service was improper and the statute of limitations had run. Before an opinion was rendered on this motion, plaintiff served the complaint again by sending it to the United States Marshal in New Jersey for service on defendant's general counsel in accordance with Section 12 of the Clayton Act, 15 U.S.C. § 22 (1964).

Defendant renewed its motion on the ground that venue was improper in this district. An affidavit of defendant's general counsel was submitted in support of the motion in this and a companion case, Lippa & Co., Inc. v. Lenox, Inc., 305 F.Supp. 175. Plaintiff was allowed to submit interrogatories to the defendant on the limited question of whether there was venue over the defendant in this district.

The question of whether under the provisions of Section 12 of the Clayton Act, there is venue in this district has been decided in an opinion in a companion case. See Lippa & Co., Inc. v. Lenox, Inc., 305 F.Supp. 175 (D.Vt. 1969). Since the facts and the issue in this case are identical to those in the companion case, it is clear that on the basis of that opinion venue lies over the defendant in this case.

This leaves only the question of the statute of limitations. The statute of limitations applicable to antitrust actions is set out in Section 4B of the Clayton Act, 15 U.S.C. § 15b (1964):

Any action to enforce any cause of action under sections 15 or 15a [providing for private treble damage actions] of this title shall be forever barred unless commenced within four years after the cause of action accrued. * * *

R. Allan Paul, Paul, Frank & Collins, Burlington, Vt., for plaintiff.

Guy M. Page, Yandell & Page, Burlington, Vt., and Andrew C. Hartzell, Jr., Debevoise, Plimpton, Lyons & Gates, New York City, for defendant.

## OPINION

LEDDY, District Judge.

This is a private antitrust action brought by Lippa's, Inc., a Vermont re-

The parties in this case are in agreement that the cause of action, if any, accrued on January 2, 1964. The suit was instituted on September 13, 1968. Therefore, the action was commenced over four years after the cause of action accrued and, absent other provisions, would be barred by Section 4B of the Clayton Act.

Plaintiff seeks to avoid this result by invoking Section 5(b) of the Clayton Act, 15 U.S.C. § 16(b) (1964):

> Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws * * * the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter * * *.

Although the question of whether section 5(b) applies in this case is essentially legal, it is necessary to explore some additional facts which plaintiff references in invoking section 5(b).

The plaintiff alleges in its complaint that prior to January 2, 1964, the plaintiff purchased the defendant's china dinnerware as an authorized retail dealer. During the period plaintiff was a dealer, defendant issued price lists and advertising material in which the resale prices of its products were set out. Defendant made it known to its retailers that if it did not retail defendant's china at the price set forth in the lists and advertising materials, they would no longer be allowed to buy defendant's china. Defendant also made it known that it prohibited transshipping—that is, sales by retailers to other dealers who had not been authorized to sell defendant's products—and would terminate retailers who engaged in transshipping. Defendant policed its restrictions on resales by various means, including subscribing to a "clipping" service which provided information on resale prices.

On January 2, 1964, plaintiff was terminated for transshipping. Defendant has refused to deal with plaintiff since although plaintiff has been ready to receive more china.

On October 13, 1966, the Federal Trade Commission issued a complaint against Lenox, alleging a violation of Section 5(a) (1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (1) (1964). The complaint charged the defendant with establishing resale prices and requiring dealers to adhere to these prices. It charged the defendant with issuing price lists and entering agreements with retailers to sell at these prices. It also charges defendant with employing various means of policing and terminating retailers who are found to be selling below the set resale price.

A hearing was held on this complaint on November 16, 1966, before an FTC hearing examiner. On May 29, 1967, a cease and desist order was issued against the defendant. This order went into detail as to the specific acts in the resale price maintenance scheme that it covered. It did not mention "transshipping."

The examiner's decision was appealed to the full commission and, on April 9, 1968, the commission handed down an opinion affirming the examiner. They added, however, that the defendant must also cease his prohibition of "transshipping" since transshipping is an integral part of defendant's resale price maintenance policy. This decision is presently on appeal in the Second Circuit.

Plaintiff has argued that the Federal Trade Commission proceeding against the defendant meets the requirements of Section 5(b) of the Clayton Act and, therefore, that the statute of limitations for this antitrust action is tolled during the pendency of the FTC action. Its argument breaks down into two separate contentions: (1) the proceeding brought by the FTC against Lenox is a "civil or criminal proceeding * * * instituted by the United States to prevent, restrain or punish violations of any of the anti-

trust laws * * *;" (2) this action is based in whole or in part on any matter complained of in the FTC proceeding. For purposes of analysis, these contentions will be treated separately.

The question of whether an FTC proceeding may meet the requirements of Section 5(b) of the Clayton Act came before the Supreme Court in Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965).[1] In that case, the plaintiff had brought a private treble damage action alleging that the defendant's acquisition of all of the assets of an electrical installation company violated Section 7 of the Clayton Act and Sections 1 and 2 of the Sherman Act. Defendant made a motion to dismiss based upon the statute of limitations. Plaintiff resisted this motion on the ground that the Federal Trade Commission had brought a related proceeding against the defendant under Section 7 of the Clayton Act and that a year had not expired since the completion of that proceeding.

The Supreme Court decided that the FTC proceeding tolled the statute of limitations in the private action. It found, essentially, that the statutory wording of Section 5(b) of the Clayton Act was ambiguous. Although the precise language of § 5(b) was found not to clearly encompass FTC proceedings, it did not exclude them. Thus, the Court decided that the statutory wording provided little guidance and turned to policy considerations.

The Court noted that Congress throughout the creation of § 5 clearly expressed a desire to permit private parties the benefits of related government actions.[2] According to the Court, this policy would be seriously undermined if tolling effect were not given to FTC proceedings since these proceedings make up a major segment of the Government's antitrust enforcement efforts. Moreover, these proceedings were found to reap just as much benefit for the private litigant as actual court suits brought by the United States Department of Justice.

Although the *Minnesota Mining* opinion did not dissect the wording of § 5(b), it is clear that the Court found that an FTC administrative proceeding is a "civil * * * proceeding" as those words are used in § 5(b) and that such a proceeding is brought by the "United States" as the term is used in § 5(b).[3] While these determinations narrow the issues in this case, they do not decide it. The additional wording in § 5(b) creates another interpretative hurdle not

1. The question arose in a number of cases prior to *Minnesota Mining*, and the lower courts reached conflicting decisions. See Farmington Dowel Prods. Co. v. Forster Mfg. Co., 223 F.Supp. 967 (D.Me. 1963); Volasco Prods. Co. v. Fry Roofing Co., 223 F.Supp. 712 (E.D.Tenn. 1963); Highland Supply Corp. v. Reynolds Metals Co., 221 F.Supp. 15 (E.D. Mo.1963); New Jersey Wood Finishing Co. v. Minnesota Mining & Mfg. Co., 216 F.Supp. 507 (D.N.J.1963).

2. Section 5 of the Clayton Act contains not only the tolling provision but also a provision dealing with the use of Government judgments as prima facie evidence in related private treble damage actions. This provision by its terms applies "to all matters respecting which [the Government judgment] would be an estoppel as between the parties thereto." 15 U.S.C. § 16(a) (1964).

The major part of the defendant's argument in *Minnesota Mining* was based on the assumption that the two provisions in section 5 are co-extensive—that is, if one encompasses FTC proceedings then the other must also. From this assumption, the defendant argued that findings in FTC proceedings could not be used as prima facie evidence in private treble damage actions and thus could not have tolling effect. The Supreme Court found, however, that the two provisions are not co-extensive and stated that if FTC findings could not be used as prima facie evidence, this does not mean that an FTC proceeding could not have tolling effect.

3. The lower court decisions treating the issue prior to *Minnesota Mining* discussed the statutory wording extensively. See, e. g., Farmington Dowel Prods. Co. v. Forster Mfg. Co., 223 F.Supp. 967 (D. Me.1963).

present in *Minnesota Mining*. Specifically, I refer to the words "to prevent, restrain or punish violations of any of the antitrust laws."

The Clayton Act contains its own definition of the "antitrust laws." See 15 U.S.C. § 12 (1964). The definition includes the Sherman Antitrust Act, the Clayton Act and the Wilson Tariff Act. The FTC proceeding in *Minnesota Mining* was brought pursuant to Section 11 of the Clayton Act, 15 U.S.C. § 21 (1964), to enforce Section 7 of the Clayton Act, 15 U.S.C. § 18 (1964). Since the Clayton Act is an "antitrust law," the *Minnesota Mining* proceeding was clearly brought to "prevent, restrain, or punish violations of any of the antitrust laws."

█ The FTC proceeding in this case did not involve the Clayton Act, but instead was brought pursuant to Section 5(a) (1) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a) (1) (1964). The FTCA is not contained in the list in the definition of the term, antitrust law, in the Clayton Act. In Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958), the Supreme Court held that the list is exclusive. Therefore, the FTCA is not an antitrust law for purposes of the Clayton Act and, specifically, as that term is used in § 5(b).

Two reported decisions have treated the exact issue present in this case and have held that an FTC proceeding pursuant to § 5 of the FTCA cannot be given tolling effect. See Rader v. Balfour, 3 Trade Reg.Rep. ¶ 72,709 (N.D.Ill. 1968); Laitram Corp. v. Deepsouth Packing Co., 279 F.Supp. 883 (E.D.La. 1968). The rationale for these decisions is that since the FTCA is not an antitrust law, FTC proceedings pursuant to § 5 of the FTCA are not brought to "prevent, restrain or punish violation of any of the antitrust laws." See also Y & Y Popcorn Supply Co. v. ABC Vending Corp., 263 F.Supp. 709 (E.D.Pa. 1967).

While I recognize that these cases are persuasive authority, I choose not to follow them. The method of analysis used in *Minnesota Mining* is equally applicable in this case. Therefore, as stated in *Minnesota Mining*:

[i]t is not the literal wording of such a provision that is controlling where, as here, Congress has evidenced neither acceptance nor rejection of either interpretation, yet one effects a clearly expressed congressional purpose while the other defeats it.

381 U.S. at 321, 85 S.Ct., at 1478. As stated in a related case, New Jersey v. Morton Salt Co., 387 F.2d 94 (3d Cir. 1967), the result of this method is that "the tolling provision, if of doubtful meaning, should be interpreted in a way which will permit a determination on their merits of private claims in this area." 387 F.2d at 97.

Using this method of analysis, I find that the tolling statute as applied to the problem involved herein is of doubtful meaning. While it is clear that § 5 of the FTCA is not an antitrust law, this does not mean that proceedings brought pursuant to § 5 are not brought to "prevent, restrain, or punish violations of any of the antitrust laws." This seemingly anomolous conclusion results from the substantive nature of § 5(a) (1) of the FTCA.

█ It is clear that any activity that violates either the Sherman Act or the Clayton Act also violates § 5(a) (1) of the FTCA. See Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 609, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); FTC v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). The scope of § 5(a) (1) of the FTCA, however, is much broader. It is also designed "to stop in their incipiency acts and practices which, when full blown, would violate those Acts." FTC v. Motion Picture Advertising Serv. Co., 344 U.S. 392, 394, 73 S.Ct. 361, 363, 97 L.Ed. 426 (1953). See also Atlantic Ref. Co. v. FTC, 381 U.S. 357, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965). In addi-

tion, the statute is aimed at practices "opposed to good morals because characterized by deception, bad faith, fraud, or oppression * * *." FTC v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 575, 64 L.Ed. 993 (1920). Because of the breadth of the prohibitions of § 5(a) (1) of the FTCA many proceedings brought pursuant to this statute fit within the wording of the tolling statute—section 5(b) of the Clayton Act. Thus, many proceedings are brought to "restrain, or punish violations of any of the antitrust laws" in the sense that they are instituted under the FTCA to restrain or punish conduct that is also violative of one or more of the antitrust laws.

It is difficult, however, to discover whether a particular FTC proceeding is brought to restrain or punish a violation of the antitrust laws. This fact must be determined from the face of the FTC complaint.[4] The FTC complaint may contain only allegations of fact which, if proven, would be antitrust law violations. On the other hand, it may have additional allegations which constitute violations of Section 5 of the FTCA but not the antitrust laws. When these additional allegations are present, it becomes difficult, if not impossible, to predict to what extent antitrust law violations will enter into the proceedings.

Nevertheless, plaintiff in this case has argued that this court should engage in a process of deciding whether the FTC complaint alleges facts which constitute violations of one or more of the antitrust laws. Plaintiff has contended that the allegations in the FTC complaint against Lenox constitute violations of Section 1 of the Sherman Act and, therefore, that the FTC proceeding was brought to restrain violation of an antitrust law. Although the process suggested by the plaintiff may have merit in this case because of the wording of the FTC complaint herein involved,[5] it is impracticable as a general

---

4. See Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed.2d 134 (1965) discussed *infra.*

5. The heart of the FTC complaint states: . PARAGRAPH FOUR: It is now, and has been for some time, the practice and policy of respondent to adopt and employ in the various states of the United States and the District of Columbia, a system of establishing resale prices for its products by various means and methods, including the requirement that its dealers maintain or adhere to the prices established and promulgated by respondent.
PARAGRAPH FIVE: By various means and methods, respondent has entered into and effectuated the aforesaid practice and policy by which it can and does control, establish, manipulate, fix, and maintain the resale prices at which its products are sold by its dealers. In order to carry out the said plan or policy, respondent adopted and employed and still employs the following means among others, by which it has undertaken to prevent and has prevented dealers from selling said products at prices other than the said resale prices established by respondent:
(a) It issues resale price lists and advertising material to the trade in which the various resale prices for said products are set forth and explained;
(b) It makes it generally known to the trade, by direct or indirect means, that it expects and requires all dealers handling Lenox fine china products to maintain and enforce said resale prices or such dealerships will be terminated;
(c) It enters into formal and informal agreements, understandings, and arrangements with its dealers as a condition precedent to the opening of new accounts that such dealers will maintain resale prices;

(d) It solicits, invites and obtains from dealers handling Lenox fine china products cooperation and assistance in ascertaining information pertaining to any dealers or others who resell such products and fail to maintain resale prices established by respondent;

(e) It employs a system of policing the maintenance of resale prices by dealers which includes, among other things, "rigged" orders and examinations of these orders by an electrical process;

(f) It subscribes to and actively employs a "clipping" service to ascertain which dealers are advertising said prod-

rule. Although in an FTC proceeding facts may appear which constitute anti-trust law violations, the complaint may be drawn much broader to take advantage of the fact that Section 5 of the FTC encompasses more than simple anti-trust law violations. As a result, plaintiff's theory creates a serious problem of predictability in many instances.

■ There is additional language in Section 5(b) of the Clayton Act which seems to take care of the problem. Proceedings have tolling effect not only if they are brought to restrain or punish antitrust law violations but also if they are brought to prevent antitrust law violations. Under the interpretation given to Section 5 of the FTCA by the Supreme Court, the major purpose of that statute, in addition to providing an alternative method of antitrust enforcement, is to stop in their incipiency practices which, if allowed to continue, would grow into antitrust law violations. In effect, therefore, the major purpose of Section 5 of the FTCA is to prevent antitrust law violations.

This construction of Section 5 of the FTCA was first enunciated by Justice Brandeis dissenting in FTC v. Gratz, 253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993 (1920):

The task of the commission was to protect competitive business from further inroads by monopoly * * *. If it discovered that any business concern had used any practice which would be likely to result in public injury—because in its nature it would tend to aid or develop into a restraint of trade—the commission was directed to intervene, before any act should be done or condition arise violative of the Anti-Trust Act.

Id. at 435, 40 S.Ct. at 577. The majority opinion in *Gratz*, has been overruled and the dissent accepted in FTC v. Brown Shoe Co., 384 U.S. 316, 320–321, 86 S.Ct. 1501, 16 L.Ed.2d 587 (1966). This general statement on the intended effect of § 5(a) (1) of FTCA has been reiterated in many cases subsequent to *Gratz*. See Fashion Originators' Guild v. FTC, 312 U.S. 457, 466, 61 S.Ct. 703, 707, 85 L.Ed. 949 (1941) ("though * * * [§ 5(a) (1) of the FTCA] attempts to bring about complete monopolization of an industry might be stopped in their incipiency."); FTC v. Cement Institute, 333 U.S. 683, 708, 68 S.Ct. 793, 807, 92 L.Ed. 1010 (1944) ("A major purpose of that Act, as we have frequently said, was to enable the Commission to restrain practices as 'unfair' which, although not yet having grown into Sherman Act dimensions would, most likely do so if left unrestrained."); FTC v. Motion Picture Adv. Service Co., 344 U.S. 392, 394–395, 73 S.Ct. 361, 363, 97 L.Ed. 426 (1953) ("It is also clear that the Federal Trade Commission Act was designed to supplement and bolster the Sherman Act and the Clayton Act * * * to stop in their incipiency acts and practices which, when full blown,

ucts at resale prices below those established by respondent;

(g) It directs Lenox salesmen and other employees to secure information identifying any dealer who fails to observe the established resale prices;

(h) It threatens to terminate and does terminate the franchises of Lenox dealers who fail to observe and maintain the established retail prices;

(i) It threatens to terminate and does terminate the franchises of Lenox dealers who advertise Lenox fine china products at other than the established resale prices without Lenox's permission;

(j) It has in effect a program by which it makes known to dealers handling Lenox products that failure to maintain the established resale prices will result in termination of their franchise.

The above are among the various means and methods which have been used and are now being used by respondent in the enforcement of its system of maintaining established prices; all with the result that said prices have been and are generally observed and maintained by dealers handling Lenox products.

There can be no doubt that this complaint is aimed at a violation of Section 1 of the Sherman Antitrust Act—resale price maintenance. See United States v. Parke, Davis & Co., 362 U.S. 29, 80 S. Ct. 503, 4 L.Ed.2d 505 (1960).

would violate those Acts * * * as well as to condemn as 'unfair methods of competition' existing violations of them."); Atlanta Refining Co. v. FTC, 381 U.S. 357, 367–370, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965); FTC v. Texaco, Inc., 393 U.S. 223, 225, 89 S.Ct. 429, 431, 21 L.Ed.2d 394 (1968) ("Congress enacted § 5 of the Federal Trade Commission Act to combat in their incipiency trade practices that exhibit a strong potential for stifling competition.").

■ It is a simple task to recognize FTC complaints that are brought either to punish or restrain violations of the antitrust laws since, under the interpretation given Section 5 of the FTCA, only deceptive practices are excluded from that category. See e.g., FTC v. Winstead Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729 (1922); FTC v. Raladam Co., 283 U.S. 643, 51 S.Ct. 587, 75 L.Ed. 1324 (1931); FTC v. R. F. Keppel & Bros., 291 U.S. 304, 54 S.Ct. 423, 78 L.Ed. 814 (1934); FTC v. Mary Carter Paint Store, 382 U.S. 46, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965). There is no doubt that the FTC complaint in this case was brought either to prevent or restrain violations of any of the antitrust laws.[6]

Such an interpretation of Section 5(b) of the Clayton Act is certainly consistent with the philosophy expressed in *Minnesota Mining*. The court in *Minnesota Mining* was impressed by the fact the FTC fact finding resources would be available to the plaintiff if the statute were tolled. They were also impressed by the help that the FTC complaints and decisions on questions of law would be to the private litigant. They also felt that an absolutely arbitrary distinction arises when the tolling effect

of a proceeding (to enforce § 7 of the Clayton Act) turns on who happens to bring it, the Justice Department or the FTC.

All of these factors are involved where the proceeding is brought under § 5(a) (1) of the FTCA and is of antitrust character. Even if the actions complained of in the FTC proceeding do not in themselves make out an antitrust violation, the evidence, pleadings, law, and final decree, if any, will be of great help in a related suit. In addition, the arbitrariness found in *Minnesota Mining* is present where the FTC proceeding is under § 5(a) (1) of the FTCA. The Justice Department could well have instituted an action under the Sherman Act to restrain the same violation.

Having decided that the FTC complaint against Lenox may have tolling effect, I next turn to whether it has such effect in this case. This determination turns on whether this action is "based in whole or in part on any matter complained of" in the FTC proceeding.

The heart of the FTC complaint is the allegation that Lenox has adopted a "system of establishing resale prices for its products by various means and methods." The complaint lists some of the means for implementing this policy including price lists, pricing agreements, policing methods, threats and termination. It states, however, that the list is not all inclusive.

The complaint in this case also contains various allegations regarding defendant's resale price maintenance and prohibition of transshipping. It alleges that the plaintiff refused to adhere to the defendant's policies and, as a result, was terminated for transshipping. By the term "transshipping," the plaintiff

6. The FTC complaint is quoted in pertinent part in footnote 5, supra. It alleges a scheme of resale price maintenance enforced through various means and depending upon dealer agreement to Lenox's set prices. Therefore, the allegations fit within what the Supreme Court of the United States declared to be a violation of Section 1 of the Sherman Antitrust Act in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). It might have been possible for the FTC to have alleged facts which would have fallen short of those present in *Parke, Davis* but still fit within the prohibitions of Section 5 of the FTCA. In such a case, they would have been relying upon the preventive nature of Section 5 of the FTCA.

apparently means selling of goods to unauthorized retailers by authorized retailers.

■ Defendant contends that this case does not bear the requisite relation to the FTC proceeding because in this case the plaintiff alleges it was terminated for transshipping whereas the FTC complaint does not mention transshipping. It is clear that, as defendant contends, consideration of the applicability of § 5(b) of the Clayton Act must be limited to a consideration of the two complaints. Leh v. General Petroleum Corp., 382 U.S. 54, 86 S.Ct. 203, 15 L.Ed. 2d 134 (1965). However, the tolling statute does not require almost total identity of issues as the defendant suggests.

In *Leh*, the government suit charged that the defendant conspired with other petroleum companies to restrain and monopolize interstate commerce in violation of §§ 1 and 2 of the Sherman Act. The complaint alleged that the conspiracy began around 1936 and continued to 1950. It alleged among other things that the defendants had agreed to restrict competition from independent producers in the Pacific states area.

The private suit in *Leh* also charged a conspiracy in violation of §§ 1 and 2 of the Sherman Act. The alleged members of the conspiracy differed somewhat from the government suit. The time period over which the conspiracy allegedly existed also differed somewhat from the government suit. The purpose of the conspiracy was to restrain the wholesale and retail distribution of gasoline in the Southern California area by excluding independent jobbers and eliminating their retail outlets.

Although the allegations in the government and private suit were not identical, the Supreme Court found that under § 5(b) of the Clayton Act, the government suit acted to toll the statute of limitations for the private suit. The Court put emphasis on the fact that the statute requires only that the private suit be based in part on the government suit. It found that where, treating the

allegations as a whole, the complaints set up substantially the same claims, the statutory requirements are satisfied.

In this case, plaintiff has alleged that the defendant has set up a system of resale price maintenance, a part of which consisted of a prohibition against transshipping. The defendant apparently could have only one reason for prohibiting dealer transshipping. That is, defendant wanted to insure that its products would not be resold to dealers who would sell below the prices established by the defendant. It would also appear to be a method of solidifying its requirement that the authorized retailers could not sell below the established resale prices. It is clear that sales by authorized retailers to unauthorized retailers—that is transshipping—would have to be at prices less than the established retail prices. Therefore, transshipping must be, as alleged by the plaintiff, an integral part of a resale price maintenance scheme.

The Federal Trade Commission complaint alleges that the defendant engaged in a scheme of resale price maintenance. Various modus operandi for the scheme are alleged. A prohibition of transshipping is not mentioned. However, the Federal Trade Commission on appeal from the examiners decision in the Lenox case found the prohibition of transshipping was an integral part of the price maintenance scheme and that the order of the Federal Trade Commission should include a provision prohibiting Lenox from restricting its dealers' sales to other dealers.

■ Although, as stated above, the relationship between the private and government suits must be determined on the face of the complaints, this Court cannot ignore the realities of the situation. The thrust of both complaints is that the defendant has engaged in a retail price maintenance scheme. Therefore, even though transshipping is not mentioned in the FTC complaint, there is substantial identity of claims as the Supreme Court found was necessary in *Leh*. As a result, under § 5(b) of the

Clayton Act, the Federal Trade Commission proceeding against Lenox has tolled and continues to toll the statute of limitations as it pertains to this suit and the motion to dismiss must be denied.