FROZEN FOOD EXPRESS,
INC., Petitioner,

v.

The UNITED STATES of America and
the Interstate Commerce Commission,
Respondents.

No. 75-4446.

United States Court of Appeals,
Fifth Circuit.

July 21, 1976.

Ralph W. Pulley, Jr., Dallas, Tex., for petitioner.

Arthur J. Cerra, Gen. Counsel, ICC, Alan J. Thiemann, Atty., Thomas E. Kauper, Asst. Atty. Gen., Robert B. Nicholson, Edward E. Lawson, Attys., Dept. of Justice, Washington, D.C., for respondents.

Before AINSWORTH, MORGAN and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

This is a petition for review of an adverse order of the Interstate Commerce Commission filed by Frozen Food Express, Inc. (FFE), a motor common carrier transporting designated commodities over irregular routes in interstate commerce. FFE's gateway elimination application (Form OP-OR-9) was timely filed with the Commission and sought the elimination of gateways at points in Texas and Louisiana. "A gateway results from a motor common carrier combining or 'tacking' two separate and unrestricted grants of irregular-route authority at a service point common to each—the gateway point—and conducting operations through the gateway from points served under one authorization to those served in the other." Motor Common Carriers of Property, Routes and Service, 119 M.C.C. 170-171 (1973).

The Commission's purpose as to gateway elimination is stated by it as follows: "The Commission's gateway elimination regulation is a strong response to the Nation's energy crisis and to the practicalities of

motor carrier operation. Our goal has been to achieve impartial, sound, and realistic regulation of the surface transportation industry consistent with the National Transportation Policy declared by Congress, see Gateway Elimination, 119 M.C.C. 530, 558 (1974)." 41 F.R. No. 11, p. 2459.[1]

The instant application of FFE sought to eliminate gateways involving circuities of greater than 20 per cent. Thus they were known in the Commission as "G" applications which were specifically entitled on the application form as "Gateway Elimination." According to the Commission's regulation, the application with accompanying specified data had to be filed on or before 60 days following the effective date of the regulations. FFE's application was duly considered by Commission Review Board No. 3 under a no-hearing procedure employed by the Commission in these cases, and the application was denied in an order which stated that under the new rules set out in Gateway Elimination, 119 MCC 530 (1974), applicant was required to submit data regarding the origin, destination, gateways used, and applicable mileages on shipments handled for two years preceding November 2, 1973, but that applicant had submitted two exhibits "supposedly representative shipments" handled for the month of October 1973, and that such evidence was "too fragmentary to allow an adequate assessment of applicant's proposal," and does not "provide a satisfactory basis upon which to evaluate protestants' interests."

FFE petitioned the Commission for reconsideration of the order of Review Board No. 3, stating that it had operated between the territories involved for 20 years by tacking points in Texas and Louisiana, that its exhibits had shown the month of October 1973 only as a representative month for traffic handled, and that had the study included each month for the full two years, it would have reflected the same information as the October 1973 study projected for a period of 24 months; therefore, that applicant would have transported for the period involved nearly 40 million pounds of freight with a total revenue of approximately $840,000, an average of more than 1,600,000 pounds of freight and $35,000 of revenue each month. The petition for reconsideration also stated that FFE inquired of a Commission representative if a one-month representative study would illustrate the operations for the full two-year period and would be sufficient and was advised that this would be satisfactory. Further, the petition alleged that denial of the application carried with it also a requirement to cease further "tacking" operations which had been conducted for a 20-year period, all to the substantial detriment of the carrier's revenues and of the motor common carrier service which FFE has been rendering to the shipping and receiving public.[2] Accord-

1. The Interstate Commerce Commission's gateway elimination policy resulted from consideration by it of a broadly based joint petition of a number of petitioners filed in 1973 in the proceeding entitled Motor Common Carriers of Property, Routes and Service, 119 M.C.C. 170, and in the Commission's later decision in said proceeding, 119 M.C.C. 530 (1974). The specific rules and regulations governing gateway elimination, filing of applications and necessary accompanying exhibits, etc., were published by the Commission in 49 CFR Part 1065 entitled "Gateways and Tacking—Irregular Route Motor Common Carriers of Property."

2. As the record indicates, the Commission, by order of Division 1, denied the petition for reconsideration for lack of adequate evidence, but also stated "(f) that no sufficient or proper cause appears for reopening of the proceedings for reconsideration; or for granting any of the relief sought."

Added to the bottom of the Commission's order of denial is the following important "NOTICE":
Pursuant to the Commission's Gateway Regulations, 49 CFR 1065.1(b), any carrier filing an application in good faith in accordance with 49 CFR 1065.1(d)(2), may continue to provide service by observing its concerned gateway or gateways only until final disposition of its application proceeding; this order renders the above-entitled proceeding administratively final, and finally disposes of the subject application; and in accordance with the provisions of Section 558(c) of the Administrative Procedure Act, the temporary authorization provided pursuant to 49 CFR 1065.1(b) expires and applicant is required to cease operations thereunder upon the effective date of this order, except with respect to those gateways underlying any complete or partial grant of the subject application.

ingly, not only did the carrier lose the right to eliminate circuities in its gateway operations, it also lost the right to continue common carrier services which it alleges had been rendered by it for a long period of time by "tacking" of its operating authority.

FFE contends that under a liberal application of the gateway elimination regulations, the data which it supplied of shipments for a representative month, as it had been advised was satisfactory by a Commission representative, was adequate and sufficient to show a substantial volume of shipments, and that the application should have been granted. Alternatively, FFE requests that we remand this case to the Commission for further proceedings in order to permit it to supply an exhibit showing each and every shipment during the two-year period through the Texas and Louisiana gateways. The Commission responds that there was no abuse of its discretion, that its regulations clearly provide that FFE had the burden of showing by appropriate data all of its operations for the two-year period involved, that it failed to do so when it filed its application and accordingly the application was properly denied.

When the Commission issued its new gateway elimination regulations, it was confronted with a tremendous number of applications thereunder, having received in excess of 28,500 submittals from carriers. The large number of applications obviously taxed the facilities and staff of the Commission to the utmost. This condition is referred to by the three-judge court in *Squaw Transit Co. v. United States*, N.D. Okla.1975, 402 F.Supp. 1278, a case strongly relied upon by FFE on its appeal here. *Squaw Transit* timely filed an OP–OR–9 gateway elimination application with the Commission but did not attach any evidence of operations for the two-year period. In the letter transmitting the application the attorney for applicant stated that he was in the process of preparing the necessary information which would be filed when pre-

pared. He asked that he be called by telephone collect if this was not satisfactory. There was no response from the Commission in this regard. Later the Commission denied the application for failure to adduce evidence as required by the Commission's regulations. It then denied a petition for reconsideration to which was attached all supporting evidence, including "summary of representative shipments," and abstract of bills of *Squaw* for services rendered for supporting shippers, etc., that no sufficient cause was shown for vacating its prior order. The three-judge court held that the Commission had abused its discretion in denying reconsideration and remanded the case to the Commission so that the carrier which had failed timely to submit the evidence required could now do so and thus have its case considered on the merits. It is apparent from reading the *Squaw Transit* case and the careful review by the court of numerous cases which the Commission considered under the gateway elimination filings that the Commission's actions were not evenhanded as between carriers. Some carriers were allowed to file their applications late, some to file their supporting evidence late, and some were denied either the right to file late or to have late-filed evidence considered. The court referred to the period when the large number of applications was received as being "a harried and hectic time for the Commission."

As a result of the decision in the *Squaw Transit* case remanding the matter for further consideration, the ICC published its "General Policy Statement" relative to gateway elimination applications and promulgated a special rule affording an opportunity to all carriers whose applications were denied as a result of refusal of the Commission to consider late-filed evidence, to reopen their cases for the purpose of accepting the late-filed evidence and for further processing. *See* 41 F.R. No. 11, p. 2459.

▮▮ The Commission should have accorded the same treatment to FFE's appli-

---

It is clear therefore that further gateway operations as to this application have expired and

applicant is required to cease operations thereunder.

cation and accorded it an opportunity to supply necessary and particularized data for the entire two-year period, and have its case finally decided on the merits. To do so would further the Commission's policy in the Nation's energy crisis, which policy was designed to save fuel and make it possible for motor carriers to render more efficient service. Failure to consider the instant application on the merits, under the circumstances presented, tends to frustrate that policy. As the Commission pointed out in its General Policy Statement, "It was estimated that some 300 million gallons of fuel will be conserved annually as a result of the regulation." 41 F.R. No. 11, p. 2459.

Under the circumstances and considering 1) the Commission's declared policy to eliminate gateways and conserve energy, 2) the allegations of FFE that its operations, using a representative month, projected to nearly 40 million pounds of freight in the two-year period, 3) the misleading advice by a Commission representative to FFE that a representative month would be satisfactory on which FFE apparently relied in good faith (which the Commission has not chosen to dispute), 4) the Commission's reaction to the three-judge court decision in the *Squaw Transit* case, *supra,* resulting in the Commission allowing all carriers with late-filed evidence to have their applications reconsidered, 5) that denial of FFE's gateway application here carries with it cessation of "tacking" operations carried on according to the carrier's allegations for more than 20 years, it would be unjust, inequitable, and discriminatory to deny FFE the same right of reopening its application for further consideration and receipt of evidence of the two-year period of operations.[3]

FFE has never had its application considered on the merits. An evenhanded, as opposed to an inconsistent, policy by the Commission as to all carriers, including

FFE, in disposing of these gateway applications requires that the carrier be afforded reconsideration. No one can be injured by reconsideration, but the failure to do so will be adverse to the interests of FFE and the public. As Chief Judge Brown said in *Mary Carter Paint Co. v. Federal Trade Commission,* 5 Cir., 1964, 333 F.2d 654, *rev'd on other grounds,* 382 U.S. 46, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965):

> Our complex society now demands administrative agencies. The variety of problems dealt with make absolute consistency, perfect symmetry, impossible. And the law reflects its good sense by not exacting it. But law does not permit an agency to grant to one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, and another for Tuesday, a rule for general application, but denied outright in a specific case.

333 F.2d at 660.

Accordingly, the Commission's order is vacated and this case is remanded to the Commission with direction that the application be reopened for receipt of additional evidence and supporting data, and for reconsideration.

REMANDED TO THE INTERSTATE COMMERCE COMMISSION FOR RECONSIDERATION.

---

**3.** *Cf.* Metropolitan Trucking, Inc. Gateway Elimination, No. 75–1528 D.C. Circuit order entered March 3, 1976, remanding that case for further proceedings under the Gateway Elimination procedure, on joint motion. ¶ Of course, the Commission is not bound by the advice given to applicant by a Commission employee, *Thompson v. Texas Mexican Ry. Co.,* 328 U.S. 134, 146, 66 S.Ct. 937, 945, 90 L.Ed. 1132 (1946). Nevertheless, this circumstance is merely one factor of many we have considered, in deciding to remand this case for a determination by the Commission on the merits of the application.