**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SUNNYLAND PACKING COMPANY, Respondent.**

No. 77–1304

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1977.

(1) Within one hundred and eighty days after the alleged unlawful practice occurred

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Assoc., Gen. Counsel, Morton, Namrow, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, John D. Burgoyne, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Robert C. Lanquist, Jacksonville, Fla., for respondent.

Before GOLDBERG, CLARK, and FAY, Circuit Judges:

CLARK, Circuit Judge:

The National Labor Relations Board (Board) seeks enforcement of its order requiring Sunnyland Packing Company (Sunnyland) to cease and desist from certain unfair labor practices and also to offer reinstatement to two discharged employees. Sunnyland seeks to block enforcement of this order not by the usual device of contesting the factual sufficiency of the Board's findings and conclusions, but instead by attacking the legal underpinnings for the Board's determinations. Finding these contentions without merit, we grant enforcement of the order.

The Amalgamated Meat Cutters and Butcher Workmen of America, Local 522, AFL–CIO, began an organization campaign at Sunnyland in early 1975. A Board election was held on May 29, 1975, which the union lost by a close margin. During the organizational campaign preceding the election, the union was assisted by, among other Sunnyland employees, Patricia Ann Scott and David Wilson. Both these employees were discharged by Sunnyland on April 8, approximately 7 weeks prior to the election. Scott requested and received authorization cards from the union to distribute for signature to her fellow-employees. On April 4, Scott sought the signature of co-worker Mildred Welch while both were working on a production line. There is controversy as to whether Scott's actions interrupted production. Welch reported her conversation with Scott to her supervisor. No immediate action was taken against Scott as the company decided first to seek legal advice. On April 7, while Scott and a second co-worker, Benjamin Crosby, were walking toward the plant before reporting for work, Scott asked if Crosby would be willing to sign an authorization card. Crosby stated he had already done so. On the basis of

these two solicitations, Scott was discharged on April 8.

David Wilson was asked to sign a union card during a gathering of company employees at his home. Wilson later signed such a card. The next day Wilson told some of the other workers in his department about the meeting and they requested him to provide some cards for them to sign. The next day Wilson brought cards to these employees during the luncheon break. All cards except one were returned to Wilson during a subsequent break. Wilson approached the remaining individual, Buddy Slaughter, and asked if he had the card for him. On this and several occasions thereafter Slaughter stated he did not have the card. During work hours but while Wilson was apparently about to take a break, Wilson demanded that the card be returned to him so he could give it to someone else. Slaughter returned the unsigned card while he was at his work station. Slaughter later informed a supervisor in his department of Wilson's efforts. As a result, Wilson, was discharged.

The legal controversy centers on two employee rules contained in a handbook distributed to Sunnyland employees. The first provides:

No Sunnylander will ever be required to join a labor union to keep his job. If you should be caused any trouble, or be put under any pressure to support a union, you should report the matter to your Supervisor.

Sunnyland argues that in finding this rule to be improper the Administrative Law Judge and the Board ignored an irreconcilable conflict between earlier Board pronouncements on this issue. In *Bank of St. Louis,* 191 N.L.R.B. 669 (1971), the rule promulgated stated that if an employee was "threatened in any way or subjected to constant badgering" to join a union, the employee should report this to the management. The Board found this to be a "not too subtle attempt to urge employees to inform on union proponents" and struck it down. However, in *Whitcraft Houseboat Division,* 195 N.L.R.B. 1046 (1972), a rule

couched in the following language was found not to violate § 8(a)(1): "If anyone is causing you trouble or trying to pressure you to sign" a union authorization card, you should let the company know. In *Whitcraft*, the Administrative Law Judge cited *Bank of St. Louis* in support of his finding that the quoted language was improper. However, a three-member panel of the Board held that a request to report instances of "pressure" or "trouble" on the job "was not intended to nor did have the effect of inviting the reports of any and all organization efforts."

Since the *Whitcraft* opinion, the Board has frequently applied the *Bank of St. Louis* reasoning to find rules of this type to be violations of the Act. In *Kellwood Company, Spencer Division*, 202 N.L.R.B. 1033 (1973), the Board found unlawful a rule providing that "if someone should ask [an employee] to sign a union card that [he] should take the card without signing it and bring it to" management. A violation of § 8(a)(1) was found in *Poloron Products of Mississippi, Inc.*, 217 N.L.R.B. 704 (1975), when a company vice-president delivered a speech that included the following language:

> If someone tries to get you to sign a card, my advice to you is to tell them that you want no part of the union and for them to go away and leave you alone. If they won't leave you alone, let us know about it and we will see that something is done.

*Id.* at 707. This language was found to be another "not-too-subtle attempt by [the company] to persuade its employees to inform management as to the identity of the Union's adherents." The Board in the present case relied on its *Bank of St. Louis* holding. *See also, Lutheran Hospital of Milwaukee, Inc.*, 224 N.L.R.B. 36 (1976).

It is difficult to see how *Whitcraft* can be rationally reconciled with *Bank of St. Louis* or the Board's succeeding decisions. The Board has never attempted to distinguish it from the other cases cited on this point. However, one swallow doesn't make a summer, and one inconsistent precedent does not entitle an agency litigant to demand that the Board ignore prior and subsequent holdings which have followed a uniform approach. Sunnyland is correct in stating an agency must either conform itself to its own prior decisions or else explain the reason for its departure. *Secretary of Agriculture v. United States*, 347 U.S. 645, 74 S.Ct. 826, 98 L.Ed. 1015 (1954). The pertinent concern was well-phrased by Chief Judge Brown in *Mary Carter Paint Co. v. Federal Trade Commission*, 333 F.2d 654, 660 (5th Cir. 1964), *rev'd on other grounds*, 382 U.S. 46, 86 S.Ct. 219, 15 L.Ed.2d 128 (1965):

> Our complex society now demands administrative agencies. The variety of problems dealt with make absolute consistency, perfect symmetry, impossible. And the law reflects its good sense by not exacting it. But law does not permit an agency to grant to one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, and another for Tuesday, a rule for general application, but denied outright in a specific case.

But the focus must be on whether the agency has departed from prior norms. *Secretary of Agriculture v. United States, supra,* 347 U.S. at 653, 74 S.Ct. at 831. When such a departure occurs, the agency must set forth clearly the reasons for its new approach. *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973). *See Frozen Food Express, Inc. v. United States*, 535 F.2d 877, 880 (5th Cir. 1976); *Rayonier, Inc. v. NLRB*, 380 F.2d 187, 190 (5th Cir. 1967).

Sunnyland has not shown it has been singled out for inexplicably unique treatment by the Board. Instead, the complaint is that since *Whitcraft's* rule was allowed, Sunnyland and this court must have an explanation. We disagree. The basis for the NLRB action is clear, intelligible, and founded on the frequently reaffirmed holding of *Bank of St. Louis*. No departure from prior norms has occurred. Thus there is no need for explication of the basis for the agency's action to enable the

court to judge the consistency of that action with the agency's mandate. *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade, supra,* 412 U.S. at 808, 93 S.Ct. at 2375. Sunnyland must do more than point to a single potentially deviant precedent before the reviewing court can find such inconsistency in agency action as to constitute arbitrary treatment of litigants. *See Garrett v. Federal Communication Commission,* 168 U.S.App.D.C. 266, 513 F.2d 1056 (1975).[1]

The second rule in controversy is:

Employees are not permitted to solicit funds or support for any individual, institution or organization while in established work areas during work time. Any such activity will be considered an intolerable violation of rules.

There was evidence that no disciplinary action was ever taken against employee solicitation for any purpose other than for a union. Solicitations for such items as Avon products, candies, pies, shoes, jewelry, clothing, church lottery tickets and flowers were often conducted by employees on company time and property without consequence. The Administrative Law Judge credited this proof and concluded that the general no-solicitation rule was discriminatorily applied. Since the rule was specifically applied to unions alone it was found improper *per se,* and in violation of 29 U.S.C. § 158(a)(1).

The complaint issued against Sunnyland did not include the allegation that in applying its no-solicitation rule, the company discriminatorily applied sanctions only against those soliciting for a union. The Board found despite the absence of this allegation in the complaint that since the issue has been fully and fairly litigated at the hearing, findings and orders could be based

thereon. Sunnyland challenges the Board's right to adjudicate the unpled matter.

█ The complaint serves two purposes: to present a clear and concise statement of the facts upon which jurisdiction by the Board is predicated and to indicate clearly and concisely the acts which are claimed to constitute unfair labor practices. 29 C.F.R. § 102.15. The complaint is not to be judged by rigid pleading rules, but it must put the employer on notice of the basis of the charges against him. *N.L.R.B. v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935, 940 (5th Cir. 1976). Though the complaint does not always mark the limits of relief, enforcement of a Board order will be denied when it is based on a violation "neither charged in the complaint nor litigated at the hearing." *N.L.R.B. v. H. E. Fletcher Co.,* 298 F.2d 594, 600 (1st Cir. 1962). *See also N.L.R.B. v. Tamper, Inc.,* 522 F.2d 781, 789 n. 12 (4th Cir. 1975); *Boyle's Famous Corned Beef Company v. N.L.R.B.,* 400 F.2d 154, 164 (8th Cir. 1968). This circuit has adopted the reasoning of *Fletcher* and enforced a finding not based on a charge in the complaint, but litigated at the hearing. *Bob's Casing Crews, Inc. v. N.L.R.B.,* 458 F.2d 1301 (5th Cir. 1972); *Engineers and Fabricators, Inc. v. N.L.R.B.,* 376 F.2d 482, 485 (5th Cir. 1967).

█ As an alternative contention, Sunnyland asserts that the issue of discriminatory enforcement of the no-solicitation rule was not fully and fairly litigated at the hearing. Sunnyland contends that even if full litigation can be the sole basis for an order, we should not enforce because it never had notice that the hearing was intended to cover the "full spectrum of solicitation rule enforcement." The record clearly refutes Sunnyland's position. The General Counsel produced testimony that the solicitation rule was not applied to non-un-

---

1. Nothing here detracts from the right of a litigant who has suffered from what appears to be a deviation from the established policy of an agency to rely solely on his own case to establish the requirement that some explanation be made for a swerve if not a reversal in agency course. Indeed, this is the relevant distinction. Without reaching any conclusion on whether

*Whitcraft* does constitute such an aberration, we indicate for purposes of this distinction that a party in *Whitcraft* could have raised the issue of "unexplained departure from prior norms" and if such departure had occurred, been entitled to agency rationalization of its decision. Such entitlement however does not leave a legacy for other litigants.

ion activities. Sunnyland called as witnesses employees said to have been soliciting in violation of the rule but not sanctioned for it who denied any improper soliciting. Sunnyland asserts that its purpose was limited to discrediting the General Counsel's witnesses by showing they were wrong in asserting that others had violated the no-solicitation rule. It attempts to draw an overfine distinction. Wrongful discharge was the basic issue pled. As Sunnyland properly concedes, it was not necessary for the General Counsel to demonstrate that the no-solicitation rule never was applied to other types of activities to establish that its application to Scott and Wilson made their discharges wrongful. A showing that it was applied to union solicitation and frequently was not applied to other types of employee activities would be adequate. When a prima facie case of discriminatory application of the no-solicitation rule was made by the General Counsel, and Sunnyland sought to rebut this proof with contrary testimony, the Administrative Law Judge could, as he did, resolve the conflict. He concluded, "the plant appears to be run in a rather easy-going manner with employees being free to talk about anything they wish including the sale of merchandise." Substantial evidence supported this conclusion. Because it is plain that Sunnyland knew what was going on, that is where the matter ends.

■ Sunnyland further contends that the NLRB has improperly taken one violation—the application of the no-solicitation rule—and made it the basis for the finding of two violations of § 8(a)(1). Quoting from *N.L.R.B. v. Tamper, Inc., supra,* 522 F.2d at 799 n. 16, Sunnyland states that when the Board "undertakes to increase the number of violations arising from a single incident without notification to the parties there is a danger that evidence which was not relevant to the charged violation but which is relevant to the uncharged violation might not be presented." We find this construction of the Board's actions to be untenable. By affirming the Administrative Law Judge's findings, the Board first concluded that the rule encouraging the

reporting of any "pressure" to join a union was an attempt to repress union organizers by having employees report on their activities. The very existence of such a rule was held to be a violation of the Act. The second violation was the discriminatory enforcement of the broad no-solicitation rule. Thus two rules and two acts are involved. The first deals with the encouragement of employees to report union solicitation. The second involves applying solely to employees supporting a union those sanctions provided under a separate rule theoretically covering all. Sunnyland's claim that one act has been used to reach a finding that two violations of § 8(a)(1) have occurred is without merit.

The final alleged bar to enforcement of this order is that "the record contains a substantial body of evidence . . . which fairly detracts from the agency's view and there is no clear indication from the record that the agency recognized it as contrary to its view and, in some fashion, dealt with it as such." Thus Sunnyland proposes that before an agency's decision can be enforced when such record evidence exists, it must be evident from the order or otherwise that the agency considered this evidence but rejected it in reaching its findings. The evidentiary basis for this allegation is that nine employee witnesses testified that the general no-solicitation rule was enforced in contexts other than union organization efforts. This testimony suggested that the solicitation efforts were either not on company time or/and not on company property. That at least some employees allegedly were aware of the no-solicitation rule and felt constrained by it in areas other than union activities appears from this testimony.

■ Detailed consideration of conflicting evidence in the Board's opinion might in some instances ease appellate review of agency action. However, all that is required is that "the agency set forth clearly the grounds on which it has acted." *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade, supra,* 412 U.S. at

807, 93 S.Ct. at 2374. The Administrative Law Judge in this case considered the evidence presented before him. He referred to and described the evidence presented by the company, but explained that he accepted the contrary evidence offered by the General Counsel. More was not required.

ENFORCED.