**COLONIAL REFRIGERATED TRANS-PORTATION, INC., Petitioner,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

No. 76–1834.

United States Court of Appeals, Fifth Circuit.

July 15, 1977.

E. Stephen Heisley, Elizabeth A. Purcell, Washington, D. C., for petitioner.

Fritz R. Kahn, Gen. Counsel, Carl E. Howe, Jr., (I.C.C.) Robert L. Thompson, Carl D. Lawson, Atty., Lee I. Weintraub, Atty., Antitrust Div., Dept. of Justice, Washington, D. C., for respondents.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is a "gateway elimination" case.[1] Petitioner, Colonial Refrigerated Transportation, Inc., sought to eliminate the gateway of Chattanooga, Tennessee, in an application filed with the Interstate Commerce Commission (ICC) on June 4, 1974. After getting caught in a procedural morass, the application was finally denied and this appeal followed. We vacate and remand for further proceedings.

For years the ICC permitted irregular-route motor common carriers[2] to combine

---

1. *See* 49 C.F.R. § 1065.1 (1974).

2. "Irregular-route" carriers are those carriers authorized to operate between designated

points without restriction as to the route or highway to be traversed. *See* 49 U.S.C.A. § 304(b); 49 C.F.R. § 1040.1.

or "tack" separate and unrestricted operating authorities at their common points, i. e., gateways, so as to render through service by operating via the gateway. It became apparent to the ICC that many gateway operations involved greatly circuitous routings and that more direct operations would, in some cases, better serve the public interest. Thus, the ICC established a procedure whereby direct operating authority could be obtained by a carrier which desired to eliminate its gateway without having to make the evidentiary showing traditionally required in operating rights application proceedings.[3] This alternate procedure, setting forth the "gateway elimination" criteria, was established in *Childress-Elimination Sanford Gateway*, 61 M.C.C. 421, 428 (1952).

With the advent of the 1973–74 fuel crisis, the ICC concluded that its benign attitude regarding gateway operations should, in the public interest, be modified. It found that a significant number of gateway operations adversely affect the environment of the nation's energy resources.[4] The ICC, therefore, promulgated regulations designed to curtail most gateway operations by irregular-route carriers. As relevant to this litigation, the regulations provide that where the most direct highway distance between the points to be served is less than 80 percent of the highway distance between these points over the carrier's authorized routing through the gateway, the carrier must file an application seeking permission to operate directly, 49 C.F.R. § 1065.1(d)(2), or cease its gateway operations. A carrier seeking to eliminate a gateway under this procedure was required, *inter alia*, to submit a verified statement including "all of the evidence applicant plans to present in the proceeding, including (to the extent pertinent) evidence of the applicant's . . . past operations via the gateway for the 2 years preceding

November 23, 1973." 49 C.F.R. § 1065.-1(d)(2)(iii). Pursuant to the "gateway elimination" criteria, petitioner sought to show in its application that it had been an effective competitor during the relevant time period (November 23, 1971 to November 23, 1973) even though forced to travel through Chattanooga. On the advice of Mr. Ames, principal attorney for the Operating Rights Section of the ICC, petitioner supported its application for direct route authority with a verified statement from Mr. Roger Shaner, petitioner's Director of Commerce. Mr. Shaner's statement recited:

> Colonial has operated both a truckload and less-than-truckload service from Nashville to Alabama for approximately eight (8) years. We originate one scheduled load of consolidated LTL [less-than-truckload] to this area every week, with an "extra" truckload section moving every other week. This is in addition to the regular truckload type traffic we are handling.

> \* \* \* \* \* \*

> We have reviewed our sales and dispatch records and have determined that during the period November 23, 1971, through November 23, 1973, Colonial transported approximately 200 truckloads of LTL and regular truckload type traffic, over the Chattanooga gateway to points in Alabama. This total of truckloads for the two year period involved would cover approximately 2,000 actual shipments. The total revenue to Colonial for that two year period was $101,554.00. These figures were taken from records indicated and can be proven by those records, as well as actual copies of the freight bills involved.

Having been informed by Mr. Ames of the Operating Rights Section that a verified statement was sufficient, petitioner did not

---

**3.** Any given proposal for new operating authority must comport with the statutory standard that it is required by the "public convenience and necessity." 49 U.S.C.A. § 307(a). In *Pan American Bus Lines Operations*, 1 M.C.C. 190, 203 (1936), the ICC announced certain guide-

lines to aid in its determination of the public convenience and necessity.

**4.** *See Motor Common Carriers of Property, Routes and Service* (*Petition for the Elimination of Gateways by Rulemaking*), 119 M.C.C. 530, 535–537 (1974).

submit a traffic abstract or any other verifying information.

Refrigerated Transport Company, Inc., (Refrigerated) protested petitioner's application. Refrigerated asserted that the authority sought by petitioner would duplicate certain portions of the authority it presently held. In addition, Refrigerated protested that petitioner had failed to present proper evidence in the form of a traffic study and shippers' affidavits in support of its application.

Finally, at the same time as the petitioner's present application to eliminate Chattanooga as a gateway was pending before the ICC, petitioner had another application pending before the ICC with regard to the elimination of another gateway. Somehow, a portion of the evidence submitted for this latter application was erroneously filed in this case regarding elimination of the Chattanooga gateway. This supplemental evidence having been filed in the wrong application appears to have unbelieveably confused the handling of petitioner's gateway elimination application before the ICC.

On May 6, 1975, ICC Review Board No. 3 denied petitioner's application to eliminate the Chattanooga gateway. The denial order provided:

> *It further appearing* . . . that applicant has filed verified statements in support of the application; and that protestant Refrigerated Transport Co., Inc., a motor common carrier, has filed a verified statement in opposition to the application;
>
> *     *     *     *     *     *
>
> *It further appearing*, That the involved regulation requires that *all* evidence be filed with the application on or before June 4, 1974; that applicant by petition filed September 30, 1974, tenders additional evidence; that supplemental evidentiary presentations are not being accepted in these cases; that the regulation is clear that all evidence had to be timely filed; that applicant cannot be placed in a better position than all other carriers which position it would hold if its late-filing were accepted; and that its tendered supplemental evidence will be rejected; and good cause appearing therefor:

> *It is further ordered*, That the late-filed supplemental evidence tendered by applicant be, and is hereby, rejected.

> *And it further appearing*, That absent rejected evidence, there is no evidence of record warranting a grant of authority; that applicant failed to submit timely shippers' testimony, a traffic abstract, or even representative mileage figures; and that the application must be denied;

> Wherefore, and good cause appearing therefor:

> *We find*, That applicant has failed to establish that the present or future public convenience and necessity require the proposed operation   .    .   . .

Thus, it is apparent from this order that the ICC was under the impression that the material filed on September 30, 1974, was meant to be considered in petitioner's application for the elimination of the Chattanooga gateway. In fact, the material filed on September 30, 1974, was with regard to another case then pending. It is also noteworthy that in denying the application the ICC emphasized petitioner's failure to submit shippers' testimony, a traffic abstract or mileage figures. The ICC found "no evidence of record warranting a grant of authority."

On June 20, 1975, petitioner moved for reconsideration or, in the alternative, for reopening the proceedings for the receipt of additional evidence. Petitioner asserted that in finding no evidence of record the ICC had failed to consider the verified statement of Mr. Shaner. Petitioner offered to present documentation in support of Mr. Shaner's verified statement. In addition, petitioner pointed out that the additional evidence tendered on September 30, 1974, did not pertain to the present application but was intended to be introduced in a different proceeding. On August 18, 1975, Division 1, acting as an appellate division, affirmed the decision of Review Board No. 3.

Petitioner appealed to the United States Court of Appeals for the District of Columbia. On December 22, 1975, the ICC on its own motion agreed to reopen petitioner's application for the consideration of "any late filed evidence which was not previously considered by the Commission." The ICC's decision to reopen, however, was limited to a consideration of the additional evidence filed on September 30, 1974. Of course, this evidence was never intended to be filed in support of the elimination of the Chattanooga gateway and, thus, it is not surprising that on February 12, 1976, petitioner's application was again denied. The order recites:

It further appearing, That the evidence of record, including applicant's late-filed supplemental evidence, indicates that the application is without sufficient support; that the additional evidence while including abstracts of hundreds of shipments handled by applicant during July and August of 1973, contains no evidence of shipments originating at Nashville and destined to points in Alabama passing through the Chattanooga gateway; and that as a result, applicant has failed to show that it transported substantial traffic through its Chattanooga gateway from and to the relevant territory and the application should, therefore, be denied.

This appeal followed.

Our review on this appeal is governed by certain statutory restraints contained in the Administrative Procedure Act, 5 U.S.C.A. § 706. The statute provides in relevant portion that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . (D) without observance of procedure required by law." Furthermore,

[i]t is the general rule that the scope of judicial review of decisions of the Interstate Commerce Commission within the area of its expertise is narrow and extends only to questions affecting the constitutional power, statutory authority and warrant in the record for its determination, ascribing its findings the weight due to the judgment of an expert body. It will be presumed that the Commission properly performed its duties. This presumption attaches in the absence of clear evidence to the contrary.

United States v. Central Truck Lines, Inc., 548 F.2d 523, 524 (5th Cir. 1977). While our review of ICC orders is a recent addition to our review jurisdiction,[5] we are constrained to agree with Judge Clark that "[i]f this case is to be any gauge, a compatible relationship will be slow to develop. Practice before the ICC is strongly oriented to form—form which is described in idioms as foreign to us as the notion that substance is not paramount." Refrigerated Transport Co., Inc. v. Interstate Commerce Commission, 552 F.2d 1162, 1164 (5th Cir. 1977).

A similar gateway elimination case was before this court in Frozen Food Express, Inc. v. United States, 535 F.2d 877 (5th Cir. 1976). In Frozen Food the applicant only submitted two exhibits of representative shipments handled for one month and stated that this one month was representative of the entire two year period. The ICC denied the application on the basis that such evidence was "too fragmentary to allow an adequate assessment of applicant's proposal, and does not provide a satisfactory basis upon which to evaluate protestants' interests." Id. at 878. On petition for reconsideration, applicant stated that it had been advised by an ICC representative that a one month representative study which would illustrate the operation for the full two year period would be satisfactory evidence to accompany the application. Under these circumstances this court determined that it would be unjust, inequitable, and discriminatory to deny the applicant the right to reopen its application and vacated the ICC order and remanded for the receipt of additional evidence.

---

**5.** Review jurisdiction was vested in United States Courts of Appeals by an amendment to 28 U.S.C.A. § 2321 enacted January 2, 1975.

We are persuaded that the circumstances revealed by this record warrant a similar conclusion. Most of the factors relied upon by the *Frozen Food* court are present in the instant case. In particular, petitioner contends (and the government does not refute) that it relied upon advice by an ICC representative in deciding only to submit a verified statement in support of its application. Petitioner's verified statement reveals that it made approximately 2,000 shipments through the Chattanooga gateway during the relevant time period. Of course, the ICC's policy remains to eliminate gateways and conserve energy and the denial of petitioner's gateway application forces it to cease operation through the Chattanooga gateway. While it would appear that perhaps petitioner received the advantage of the decision in *Squaw Transit Company v. United States*, 402 F.Supp. 1278 (N.D.Okla. 1975), the ICC's reconsideration was limited to evidence which was admittedly not relevant to the elimination of the Chattanooga gateway. Thus, on remand petitioner should be allowed to supplement the record with traffic abstracts, shippers' affidavits and mileage comparisons in support of its application. We, of course, express no opinion as to the substantive merits of the application.

Accordingly, the ICC's order is vacated and this case is remanded to the ICC with the direction that the application be reopened for receipt of additional evidence and supporting data, and for reconsideration.