**BOWMAN TRANSPORTATION, INC., et al., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 79–2553.

United States Court of Appeals, Fifth Circuit. Unit B

April 22, 1981.

---

Gerald D. Colvin, Jr., Birmingham, Ala., for petitioners.

Daniel J. Conway, Craig M. Keats, John J. Powers, III, Attys., Dept. of Justice, Washington, D. C., Denise M. O'Brien, I.C.C., Washington, D. C., for respondents.

W. Randall Tye, Atlanta, Ga., T. M. Brown and Max G. Morgan, Edmond, Okl., for Theatres Service Co., Inc.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Petitioners seek review of the Interstate Commerce Commission's Decision and ORDER entered in Docket No. MC–65697 (Sub–No. 52), Theatres Service Company, Inc. Extension-Express Service, which granted TSC's application to transport general commodities moving in express service. The Administrative Law Judge (ALJ) hearing the case issued an initial decision granting authority to the applicant but restricting the authority granted to shipments weighing no more than 300 pounds per day from one consignor to one consignee. Division 2 of the ICC by a 2–1 decision approved the grant of authority but deleted the weight restriction. Division 2 issued its Certificate of Convenience and Necessity on July 7, 1979.[1]

The issue to be considered by us is whether the Interstate Commerce Commission acted rationally in refusing to impose the 300 pound weight restriction on TSC's express service.

Under the Administrative Procedure Act, the ICC decision, if supported by substantial evidence, and not arbitrary, capricious, or an abuse of discretion may not be disturbed by us. *Bowman Transp., Inc. v. Arkansas Best Freight Sys., Inc.*, 419 U.S. 281, 283–84, 95 S.Ct. 438, 440–41, 42 L.Ed.2d 447 (1974); 5 U.S.C. § 706(2)(A)–(E). *See Colonial Refrigerated Trans., Inc. v. U. S.*, 555 F.2d 1265, 1268 (5th Cir. 1977). We find that substantial evidence supports the ICC's decision and deny the Petition for Review.

Testimony from ninety-five shippers established a need for the proposed express service. *See* Record Document 110 at 6–42. No protesting carrier provided the express service offered by TSC. *Id.* at 58. Fifty-

---

1. Prior to the July 1, 1980 effective date of the Motor Carrier Act of 1980, Pub.L. 96–296, § 5(a)(3) 94 Stat. 794, which had the effect of changing the statutory criteria under which the ICC must decide applications similar to the one involved here. The ICC decision in this case was made under the prior statute, 49 U.S.C. § 10922(a).

If our decision granted the Petition for Review the ICC upon remand would be required to proceed under the new criteria. Since we deny the Petition for Review, however, the Motor Carrier Act of 1980 does not affect our consideration.

eight of these ninety-five shippers testified to the occasional need to consign shipments in excess of the arbitrary 300 pound restriction imposed by the ALJ. *Id.* at 6–42. This evidence satisfied the substantiality requirement.

The Commission's decision in *Transportation Activities of Arrowhead Freight Lines, LTD*, 63 M.C.C. 573 (1955) is the seminal case in this area of motor carrier regulation. Its statement of the requirements upon bona fide express property carriers with authority to transport general commodities has survived undiluted and undiminished for twenty-five years:

Succinctly stated the rendition of a bona-fide express service by property carriers with authority to transport general commodities requires such carriers (1) to provide a bona fide holding out together with the ability to transport any commodity which may be safely transported in ordinary van-type equipment, including those requiring a maximum degree of care or security or both, (2) to provide such care or security or both as the inherent characteristics of the commodities making up the shipments which are accepted may require, (3) to provide equally expeditious transportation and careful handling for all accepted shipments, regardless of their volume, special demands, or value, from the point of pickup to the point of delivery, (4) to perform actual operations between all authorized points upon firmly established schedules allowing minimum practicable highway transit time and providing fixed delivery times which are available to actual and potential shippers at authorized origins and which in practice are not changed except after substantial notice to the general public, and, (5) to use relatively simple billing, rate structures, and rate publications whereby the rates and charges for the services offered and performed may easily be determined with a minimum of delay.

Transportation Activities of Arrowhead Freight Lines, LTD, *supra*, 63 MCC 581–82.

*Arrowhead* did not put a weight restriction on express carriers but described them as generally catering to small packages in this language:

*General.*—We are aware that the *modus operandi* of motor common carriers of general commodities results in a different degree in the quantum and quality of service rendered to individual shippers, particularly shippers of volume traffic of a recurring nature as opposed to those who occasionally tender small shipments, i. e. those below the 300 to 500 pound level, with emphasis on shipments of less than 100 pounds. By comparison, carriers engaged in an exclusively express service, being aware that shipments of any substantial volume are not offered to them in other than exceptional circumstances, of necessity direct their primary interest and effort to the transportation of relatively small shipments because such traffic is practically all that is normally tendered to them. Moreover, when the two categories of carriers are compared solely on the basis of the service they provide on small shipments, the ordinary freight carriers, with their method of handling traffic directed toward heavier shipments, are not able to render the same service on small shipments as express carriers who are organized and equipped primarily for that purpose. Id. 579.

In three cases, *Freight, All Kinds, L.C.L., Container Charges-U.S.A.*, 323 I.C.C. 468 (1964), *Railway Express Agency, Incorporated, Extension-Traverse City, Mich.*, 96 M.C.C. 727 (1965), and *Nebraska-Iowa Xpress, Inc. v. I.C.C.*, No. 79–1661 (D.C.Cir. 1980), the Commission removed or disallowed weight restrictions on express carriers. In *Freight, All Kinds*, the examiner had imposed a 500 pound weight restriction on Railway Express Agency and in removing this restriction the Commission stated, "To impose such an unexpected burden upon the respondent would be improper. Assuming, *arguendo*, that it would be desirable to define 'express service' in terms of a definite weight limit, the factual basis for such a limitation could be established only in a general investigation or ex parte pro-

ceeding." *Freight, All Kinds, L.C.L., Container Charges-U.S.A., supra,* 323 I.C.C. at 482. In removing another 500 pound weight limitation which had been imposed by the joint board, the Commission stated:

The Commission is always reluctant to impose restrictions in grants of operating authority which are administratively undesirable or difficult to enforce. The instant restriction imposed by the board in its recommended grant has both of these characteristics, and we perceive no useful purpose in retaining such a restriction in the authority granted. This condition which defines and confines the operation to be performed in terms of an arbitrary weight limit is incompatible with the concept of "express service".

*Railway Express Agency, Incorporated, Extension-Traverse City, Mich., supra,* 96 M.C.C. at 728. In *Nebraska-Iowa Xpress, Inc. v. I.C.C.,* the United States Court of Appeals for the District of Columbia Circuit affirmed the removal of a 200 pound weight restriction. The evidence in the case, which the D. C. Circuit found to be substantial enough to support the Commission's decision showed that the weight restriction caused confusion and delay because drivers sometimes picked up packages weighing more than 200 pounds and the company had to return those packages and customers would like faster services on heavier shipments. *Nebraska-Iowa Xpress, Inc. v. I.C.C., supra,* No. 79–1661 at 2.

Petitioner's reliance upon *Wycoff Company, Incorporated, Extension-Southern Idaho,* 107 M.C.C. 776 (1968)[2] is misplaced. The facts in *Wycoff* were unique and mandated its outcome. There the applicant sought a certificate of public convenience and necessity for express service limited to packages weighing less than 250 pounds and not more than 500 pounds in the aggregate. The applicant proposed to transport only small shipments in equipment particularly adapted to the transportation of small packages, to provide an expedited service

and to perform deliveries in a number of ways designed to meet the convenience of particular consignees. *Id.* at 778. Features of the proposed service included daily published schedules, late evening departures and early morning arrivals, with same-day service to certain points, weekend deliveries, door-to-door pickup and delivery. *Id.* A unique feature was to make, not infrequently, middle of the night deliveries to locked boxes or to a business for which the applicant may have a key. *Id.* at 780. In addition, the evidence showed that shippers were supporting the application for emergency shipments weighing 100 or less pounds and that the protestants in the case were able and willing to expedite and to provide special delivery on emergency shipments and their facilities were available if a genuine emergency situation arose. *Id.* at 779–80. Under the *Wycoff* facts, the Commission held that the applicant's service was not a bona-fide express service but was essentially a small package-delivery service and limited the service to the transportation of packages not more than 100 pounds, and not more than 200 pounds in the aggregate. *Id.* at 781–83.

The facts before us differ markedly from those in *Wycoff.* First, the *Wycoff* applicant's service as described above was a small package delivery service whereas the service described in the instant case is a true express service encompassing the characteristics set forth in *Arrowhead.* The applicant in the instant case intends to accept any commodities (except classes A and B explosives), to provide special care and security when needed, to transport primarily small packages, to employ a relatively simple tariff, to employ a progressive rate up to 100 pounds, to impose no size or weight limitations, to provide rate sheets, to provide a combination bill of lading and express bill, to transport shipments with declared valuations, to offer freight collect and c. o. d. service, to serve all shippers equally, to have definite times of arrival and departure, to provide service 5 days a

---

2. *Wycoff* is the only case brought to our attention involving I.C.C. approval of a weight restriction of 100 pounds. The protestants in this proceeding sought a similar 100 pound restriction before the ALJ and Division 2 of the I.C.C.

week, and eventually to serve every service point of a population of 500 or more. Record, Document 110 at 2–4. Another difference between *Wycoff* and the instant case is in the evidence of shipper need. In *Wycoff*, an analysis of the shippers who supported the application indicated that the average weight of each shipper's emergency shipments was considerably less than 100 pounds in most, if not all instances. An analysis of the statements of the 95 shippers here shows that all of them intend to use TSC frequently for shipments of less than 300 pounds, but 56 of the 95 intend to use TSC occasionally for shipments of over 300 pounds. Finally, the *Wycoff* protestants had shown that they were able and willing to provide special delivery on emergency shipments whereas no other express carrier was among the protestants in our case.

The evidence is persuasive that TSC intends to operate a true express service within the *Arrowhead* criteria. Record, Document 110 at 2–4. TSC intends the following:

> To transport primarily small packages. Its solicitation of shippers has indicated that the majority of shipments will weigh less than 200 pounds. The weight of the average shipment was projected at approximately 100 pounds, with the greatest number of shipments being in the 50– to 60–pound bracket. Eighty-five percent of the traffic is expected to be composed of very small shipments. Its biggest competitor is expected to be a non-protestant package carrier, hereinafter referred to as Package Carrier, which has a general maximum weight restriction of 100 pounds. Applicant will not assess a minimum charge. TSC will hold itself out to transport shipments of all weights. The carrier does not anticipate transporting many heavy shipments, except where assurance of delivery, care of security warrants the payment of a premium charge.

*Id.* at 3.

In this proceeding the arbitrary weight limit set by the ALJ was not justified under the accepted standards of express service. Substantial evidence in the record before the ALJ supports the ICC decision to delete this restriction.

PETITION FOR REVIEW DENIED.