**C. A. WHITE TRUCKING COMPANY,
Petitioner,**

v.

**UNITED STATES of America and
Interstate Commerce Commission,
Respondents.**

No. 75–4421.

United States Court of Appeals,
Fifth Circuit.

July 15, 1977.

Rehearing Denied Aug. 24, 1977.

Bernard H. English, Lloyd Scurlock, Clayte Binion, Ft. Worth, Tex., for petitioner.

Fritz R. Kahn, Gen. Counsel, ICC, Washington, D. C., Edward H. Levi, U. S. Atty. Gen., U. S. Dept. of Justice, Thomas E. Kauper, Asst. Atty. Gen., Robert Lewis Thompson, Atty., Interstate Commerce Commission, Carl D. Lawson, Dept. of Justice, Asst. Chief, Appellate Section, Arthur J. Cerra, Gen. Counsel, Washington, D. C., for respondents.

Before GODBOLD, TJOFLAT and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

This is a "gateway elimination" case.[1] Petitioner, C. A. White Trucking Company, is an irregular route common carrier for the transportation of machinery, equipment, materials and supplies used in the oil and gas industry. Petitioner seeks review of an order of the Interstate Commerce Commission (ICC) denying its application to eliminate two gateways. We affirm.

Petitioner was authorized under various certificates to transport oil field commodities (1) between points in Texas and those in Lea and Eddy Counties, New Mexico, on the one hand, and, on the other, points in Arkansas and Illinois, through gateways in Seminole and Potawatomie Counties, Oklahoma, and (2) between points in Kansas, on

---

1. *See Refrigerated Transport Co., Inc. v. Interstate Commerce Commission*, 552 F.2d 1162 (5th Cir. 1977); *Eagle Motor Lines, Inc. v. Interstate Commerce Commission*, 545 F.2d 1015 (5th Cir. 1977); *Frozen Food Express, Inc. v. United States*, 535 F.2d 877 (5th Cir. 1976).

the one hand, and, on the other, points in Colorado, Montana, Utah and Wyoming, through gateway points in Texas. In its "gateway elimination" application petitioner sought to eliminate the gateways in Seminole and Potawatomie Counties, Oklahoma and the gateway points in Texas. In essence petitioner sought authority to transport directly between points in Texas and Lea and Eddy Counties, New Mexico, on the one hand, and, on the other, points in Arkansas and Illinois and between points in Kansas, on the one hand, and, on the other, points in Colorado, Montana, Utah, and Wyoming.

In support of its application, petitioner submitted a list of representative shipments transported from January 22, 1972, to May, 1974. Under the ICC's gateway elimination regulations, 49 C.F.R. § 1065.1, only 32 of these representative shipments were considered relevant to a determination of the application.[2] Of these 32 shipments, 27 were from points in Texas to Arkansas; 4 occurred between Texas and Illinois; and 1 shipment was between Arkansas and Texas. Petitioner listed no shipments from Illinois to Texas or New Mexico and no shipments were listed from New Mexico to Arkansas or Illinois, or from Arkansas to New Mexico. Petitioner also presented statements by shippers to the effect that they had used petitioner's services in the past; that they had found the services to be reliable; and that they expected to use petitioner's services in the future.

Only one protestant filed a verified statement in opposition to petitioner's application.[3] This protestant, B. F. Walker, Inc., showed that between January and March, 1975, it had transported 16 truckloads (4 shipments) from points in Texas to Illinois, 17 truckloads (6 shipments) from points in

Texas to Arkansas, 2 truckloads (2 shipments) from points in New Mexico to Illinois, 9 truckloads (5 shipments) from points in Arkansas to Texas, and 8 truckloads (6 shipments) from points in Illinois to Texas. The ICC explicitly took note of protestant's shipments from Texas to Arkansas but concluded that protestant's evidence was entitled to little weight since it failed to specify the origin or destination points and failed to indicate the proportion of traffic that might be diverted by any grant of authority to petitioner.

On the basis of the evidence before it, ICC Review Board No. 1 determined that petitioner had been "transporting substantial traffic" from Houston, Lone Star, Lufkin, and Uvalde, Texas to destinations in Arkansas. As to the remaining portion of the application to eliminate Seminole and Potawatomie Counties, Oklahoma, the ICC determined that petitioner had failed to establish that it had been an effective competitor. In addition, the ICC determined that petitioner had failed to demonstrate the inadequacies of existing services and, thus, did not establish a public need for its service.

As to petitioner's attempt to eliminate the gateway of points in Texas, the ICC determined that petitioner's traffic was not sufficient to establish it as an effective competitor and that its evidence was insufficient demonstration of a public need for the authority which it sought.

On motion for reconsideration, ICC Division I, acting as an appellate division, deleted the authority granted to petitioner to transport from Uvalde, Texas to points in Arkansas. ICC Division I noted that petitioner's traffic from Uvalde was destined for Illinois rather than Arkansas. Thus, because petitioner had failed to demon-

2. 49 C.F.R. § 1065.1(d)(2)(iii) restricted the relevant evidence to "past operations via the gateway for the 2 years preceding November 23, 1973." The purpose of only allowing evidence that predates the promulgation of the gateway elimination rules was to avoid the attempted use of the new regulations to establish service that was not being conducted before the advantages of the new policy were announced. See Refrigerated Transport Co., Inc. v. Interstate Commerce Commission, supra at 1167. None of petitioner's representative shipments were prior to November 23, 1971.

3. Actually, three other motor common carriers filed untimely objections, but they were not considered by the ICC in the processing of petitioner's application.

strate that it had transported a substantial amount of traffic from Uvalde to Arkansas, ICC Division I modified the earlier order to delete the origin point of Uvalde, Texas. In all other respects, the findings of Review Board No. I were affirmed.

Petitioner first contends that the ICC erred in failing to grant it statewide or areawide authority to make pickups in Texas, because the ICC agreed to follow "grandfather" procedures[4] in gateway elimination cases and in "grandfather" cases statewide or areawide authority has been granted to specialized carriers of oil field equipment. The ICC gateway elimination regulations provide that applications "will be processed in accordance with the normal procedures of the Interstate Commerce Commission as modified in the Federal Register publication of a notice of the filing of such applications (which shall reflect the procedure outlined in the Commission's report and order in *Gateway Elimination*, 119 M.C.C. 530)." 49 C.F.R. § 1065.-1(d)(2)(iv). The *Gateway Elimination* case referred to in the regulation, *Motor Common Carriers of Property, Routes and Service*, 119 M.C.C. 530 (1974), stated that in judging whether elimination of a specific gateway would be permitted, no greater burden of proof would be imposed "than that governing regular elimination of gateway applications, but will be somewhat more akin to the standard 'grandfather' procedures utilized by this Commission in the past." *Id.* at 550. Based upon this analogy, petitioner contends that it was error for the ICC to grant less than statewide or areawide authority from Texas to Arkansas.

■ The analogy to the grandfather cases in gateway elimination cases has very recently been rejected by this court in *Refrigerated Transport Company, Inc. v. Interstate Commerce Commission, supra.*

This burden of proof proviso is not a mandate that every carrier then utilizing gateways or tacking will be entitled either to continue or get gateway elimination benefits. The *Gateway Rulemaking* case and the public interest in resolving the energy crisis which compelled gateway rules indicate that the use of circuitous routes must stop. The normal grandfather considerations for continuing past practices are antithetical to the purpose of these rules and grandfather protection was correctly rejected by the Commission.

*Id.* at 1166.

We, likewise, reject the notion that the nature of petitioner's operations entitle it to some type of "grandfather" consideration.

■ In the *Gateway Elimination* case the ICC determined that the traditional "gateway elimination" criteria established in *Childress-Elimination, Sanford Gateway*, 61 M.C.C. 421 (1952), would apply. Thus, petitioner was required to demonstrate either (a) that it transported a substantial volume of traffic from and to the points involved and, in so operating, it effectively and efficiently competed with existing carriers, or (b) that a public need for through service exists. *See also* 49 C.F.R. § 1065.-1(d)(2)(ii)(B).

Petitioner demonstrated that during the relevant two year period it transported 4 shipments from Texas to Illinois and 1 shipment from Arkansas to Texas. Petitioner asserts that comparison with protestant's shipments demonstrates that it transported a substantial amount of traffic and was an effective competitor. The ICC responds that an extrapolation of protestant's three-month figures (4 shipments from Texas to Illinois and 5 shipments from Arkansas to Texas) demonstrates that petitioner was not transporting a substantial amount of traffic and was, consequently, not an effective competitor. Alternatively, petitioner

4. Under part II of the Interstate Commerce Act, Congress chose to "grandfather" any carrier which could prove that it had been operating since June 1, 1935. Thus, to the extent that a carrier could prove its operation over a route or within a certain territory, the ICC was required to certificate such service as being "required" by the public convenience and necessity without further proof by the carrier as to actual public need for the service. *See* 49 U.S.C.A. § 306(a).

asserts that it was improper for the ICC to consider protestant's 1975 shipments in comparison to its 1971–73 figures. If protestant's evidence is thus rejected, on the record petitioner transported 100 percent of the traffic. The ICC responds that it was not restricted to a consideration of protestant's 1971–73 shipments, and, even if it was, petitioner's evidence on the amount of traffic was insubstantial as a matter of law.

■ We must at this point remember the limited nature of the scope of our review of decisions of an administrative agency. Our statutory guide provides that we shall set aside agency action, findings or conclusions that are unsupported by substantial evidence or made without observance of procedure required by law or found to be arbitrary, capricious or an abuse of discretion. 5 U.S.C.A. § 706. We do not sit as a trier of fact and it is not our function to weigh the evidence pro and con.

It is the general rule that the scope of judicial review of decisions of the Interstate Commerce Commission within the area of its expertise is narrow and extends only to questions affecting the constitutional power, statutory authority and warrant in the record for its determination, ascribing its findings the weight due to the judgment of an expert body. It will be presumed that the Commission properly performed its duties. This presumption attaches in the absence of clear evidence to the contrary.

*United States v. Central Truck Lines, Inc.,* 548 F.2d 523, 524 (5th Cir. 1977).

■ We have carefully considered the entire record in this case and we conclude that substantial evidence in the record supports the decisions of the ICC that petitioner failed to establish that it was an effective competitor from points in Texas to Illinois and from points in Arkansas to Texas. Petitioner showed 4 shipments from Texas to Illinois and 1 shipment from Arkansas to Texas over a 2 year period. While we do not heartily endorse the ICC's comparison with protestant's 1975 shipments, we are of the opinion that under the

circumstances of this case consideration of this evidence was not arbitrary, capricious or an abuse of discretion. Obviously, a better comparison could be made with contemporaneous evidence of shipments made by protestant. We think, however, that where contemporaneous evidence is unavailable, the ICC may consider the evidence in hand and afford it such probative weight as it deems appropriate. In addition, we are persuaded that the ICC's conclusion that petitioner had failed to establish that it was an effective competitor is supported by substantial evidence in the record, even absent protestant's evidence. Tacit in the ICC's conclusion is a determination that 4 shipments in 2 years from Texas to Illinois and 1 shipment in 2 years from Arkansas to Texas is not a substantial amount of traffic. We do not find such a conclusion arbitrary or capricious.

■ Finally, petitioner claims that the ICC erred in concluding that it had failed to demonstrate a public need for the authority which it sought. Particularly relevant on this issue are the statements of supporting shippers tendered by petitioner. The ICC generally characterized these statements as expressing a desire for direct and expedited service and their expectations that they would be shipping products to and from these areas in the near future. The ICC concluded that petitioner had failed to demonstrate the inadequacies of existing service and, thus, a public need for additional services. Petitioner asserts that it was improper for the ICC to require it to demonstrate the inadequacies of existing services since the adequacy of the existing services necessarily included the right to transport through gateways.

We find petitioner's argument unpersuasive. First, we find no inherent difficulty in the requirement that a carrier demonstrate the inadequacy of existing service notwithstanding its own participation in the existing services. Thus, such a showing would seem to simply require that a carrier demonstrate the inadequacy of the existing services absent its own operations. Second, except for the 4 shipments from Texas to

Illinois and the 1 shipment from Arkansas to Texas, petitioner had never transported a shipment through its gateways which would account for the adequacy of existing services. The determination that petitioner had failed to demonstrate a public need for its services was sound.

On the basis of the foregoing, the orders of the Interstate Commerce Commission are hereby

AFFIRMED.