815 F.2d 589
 GRACE PETROLEUM CORPORATION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Plains Resources, Inc. and Arkla Energy Resources, a
division of Arkla, Inc., Intervenors.
 No. 85-2038.
 United States Court of Appeals,
Tenth Circuit.
 March 31, 1987.
 
 Patricia Fry Eldridge of Bracewell & Patterson, Houston, Tex. (Charles H. Shoneman and Randall S. Rich, Bracewell & Patterson, Washington, D.C., with her, on the briefs), for petitioner Grace Petroleum Corp.
 Joseph R. Hartsoe, Attorney (William H. Satterfield, General Counsel, Jerome M. Feit, Solicitor, and Andrea Wolfman, Attorney, with him on the brief), F.E.R.C., Washington, D.C., for respondent F.E.R.C.
 Stanley L. Cunningham (C. David Stinson, also of McAfee & Taft, Oklahoma City, Okl., with him, on the brief), for intervenor Plains Resources, Inc.
 Before LOGAN, MOORE, and ANDERSON, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 This appeal concerns the price that small producers may receive for natural gas delivered after an existing contract has expired, but before a rollover contract has been executed. In 1973, petitioner Grace Petroleum Corporation (Grace), then a small producer,[1] succeeded to another small producer's interest in a 1962 contract to sell natural gas to Arkansas Louisiana Gas Company (Arkla). This 1962 contract expired on December 13, 1982, before a rollover contract[2] was executed. Because the gas in question was dedicated to interstate commerce, Grace was obligated, pursuant to 15 U.S.C. Sec. 717f(b), to continue deliveries after the contract expired.[3]
 
 
 2
 On May 2, 1984, Grace and Arkla executed a rollover contract. The parties explicitly agreed that "[t]he rollover gas purchase contract will be effective on December 13, 1982," the expiration date of the prior contract. R. I, 35. Under the rollover contract, Grace was to receive a higher price, the maximum allowed under Sec. 106(a) of the Natural Gas Policy Act (NGPA), 15 U.S.C. Sec. 3316(a).
 
 
 3
 Grace petitioned the Federal Energy Regulatory Commission for a declaratory order allowing Grace to receive the higher price for December 13, 1982, to May 2, 1984--the period after the original contract had expired but before the rollover contract had been executed. At issue in this appeal are the Commission's orders denying Grace's petition, Grace Petroleum Corp., Order Denying Petition for Declaratory Order, 30 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,321 (March 25, 1985) (hereinafter March 25 Order), and Grace Petroleum Corp., Order Denying Rehearing, 31 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,220 (May 23, 1985) (hereinafter May 23 Order).
 
 
 4
 Grace alleges that the Commission acted arbitrarily in failing to follow its own precedent and that the Commission exceeded its authority under the NGPA in denying Grace's petition. Plains Resources, Inc., a small producer negotiating similar retroactive rollover contracts, has intervened on appeal. Plains argues that the Commission's orders are contrary to the regulatory scheme under the National Gas Act (NGA), 15 U.S.C. Secs. 717-717w, and fail to recognize the existence of a contract implied in fact during the interim period. Because we hold that the Commission in denying Grace's petition has arbitrarily disregarded its own prior interpretations of Sec. 106(a) of the NGPA, 15 U.S.C. Sec. 3316(a), we do not reach the other arguments.
 
 
 5
 Section 106(a)(1)(A) of the NGPA allows small producers to charge the higher rollover price beginning with "the month in which the effective date of such rollover contract occurs." 15 U.S.C. Sec. 3316(a)(1)(A) (emphasis added). Two of the Commission's decisions allowed small producers to contract for an effective date before the actual execution of the rollover contract. Spradling Drill Co., 14 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,145, at 61,265 (Feb. 19, 1981) (A small producer is "entitled to collect [the Sec. 106(a)(1)(A) rollover] rate as of the effective date authorized by the contract."); Riddell Petroleum Corp., 16 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,047, at 61,083 (July 24, 1981) ("Riddell, as a small producer, is entitled to collect [the rollover rate] ... as of the date agreed upon by the parties as being the contract's effective date."). Under these decisions, Grace should be allowed to contract for a retroactive "effective" date that would allow it to receive the higher Sec. 106(a) rollover price during this interim period. The Commission does not oppose this reading of Spradling and Riddell, but argues instead that these decisions have been properly overruled.
 
 
 6
 While an agency has a well-settled right to modify or even overrule established precedent, "it is equally settled that an agency must provide a reasoned explanation for any failure to adhere to its own precedents." Hatch v. FERC, 654 F.2d 825, 834 (D.C.Cir.1981); accord Squaw Transit Co. v. United States, 574 F.2d 492, 496 (10th Cir.1978) ("[W]e surely must require the agency to adhere to its own pronouncements, or explain its departure from them."). "[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed and not casually ignored, and if an agency glosses over or swerves from prior precedent without discussion it may cross the line from the tolerably terse to the intolerably mute." Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C.Cir.1970) (footnotes omitted), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). See also 4 K. Davis, Administrative Law Treatise Sec. 20:11 (2d ed. 1983).[4]
 
 
 7
 To explain its failure to adhere to its own precedent, the Commission first contends that two intervening decisions, Transcontinental Gas Pipe Line Corp., 17 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,232 (Dec. 11, 1981) (Transco ), and United Gas Pipe Line Co., 24 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,083 (July 19, 1983), overturned the rule embraced by Spradling and Riddell. In these cases the Commission prohibited retroactive modification of existing contracts. See Transco, supra, at 61,453 ("[C]ontract modifications ... permit collection of NGPA rates only from the date of contract amendment."); United, supra, at 61,221 ("[T]hese contracts can only provide authority for [statutory] prices after the contract modification or amendment was executed."). Neither case involved the present issue, whether a rollover contract could be retroactively applied for the period after the original contract has expired; neither mentioned the Spradling and Riddell decisions.
 
 
 8
 Transco and United thus gave no notice that the rule enunciated in Spradling and Riddell had changed. In fact, the Riddell decision itself distinguished modifications of existing contracts from the execution of new rollover contracts. After allowing retroactive application of rollover contracts, the Commission added in a footnote: "Riddell, of course, is not entitled to collect the rate authorized under the rollover contract until the previous contract has expired at the end of its fixed term." 16 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,047, at 61,083 n. 3. Thus, Riddell itself announced that modification of existing contracts will not qualify for the rollover rate. Reannouncing this rule in Transco and United cannot serve as notice that Riddell was overturned.
 
 
 9
 The Commission next contends that even if the rule of Spradling and Riddell was not clearly overturned by the Transco and United orders, it was overturned by the March 25 order. We agree that the March 25 order clearly stated that Spradling and United were overturned. The Commission did not, however, provide a reasoned analysis for this departure. The March 25 order justified the departure by quoting Transco at length:
 
 
 10
 " '[A] retroactive effective date ... is not permissible on both NGPA and Natural Gas Act grounds. These grounds are the filed rate doctrine that developed out of Section 4 of the Natural Gas Act; our regulations at 18 C.F.R. Sec. 157.40(c)(1) which bring even small producers within the purview of the filed rate doctrine by making it unlawful for a small producer to charge more than his contract provides, and thus bars him from retroactive as opposed to prospective price changes; and the public interest ground, arising from the Natural Gas Act, that it is against the public interest to apply rates retroactively to recover past losses even if the rate is deemed just and reasonable. This would violate the Natural Gas Act by making lawful what was unlawful at the time the gas was delivered, namely, the collection of the NGPA rate, not then authorized by the contract.' "
 
 
 11
 March 25 Order, supra, at 61,634 (quoting Transco, supra, at 61,453).
 
 
 12
 Merely reciting what was insufficient before will not cure the insufficiency. The discussion in Transco concerning the modification of existing contracts is not relevant to the issue of whether rollover contracts may be retroactively effective. The filed rate doctrine may make it "unlawful for a small producer to charge more than his contract provides," but this does not help us decide the instant case in which no contract existed.
 
 
 13
 The Commission orders of March 25 and May 23 add little to the Transco rationale. Responding to Grace's objection that the issues of retroactive modification in Transco and United and retroactive rollovers in Spradling and Riddell are distinguishable, the Commission merely states:
 
 
 14
 "This distinction in our view does not justify any difference in treatment. The fact remains that on December 13, 1982, the effective date requested by Grace, Grace was not entitled to the maximum lawful price under NGPA Section 106(a) because there was no rollover contract in existence at that time. Grace did not become so entitled until May 2, 1984, when it executed the rollover contract with Arkla."
 
 
 15
 March 25 Order, supra, at 61,634-35. These sentences state the fact that Grace loses, but not the reasoning. The Commission continues:
 
 
 16
 "Nor is it significant, as Grace suggests, that NGPA Section 106(a)(1)(A) prescribes the maximum lawful price applicable to sales under an interstate rollover contract 'in the case of the month in which the effective date of such rollover contract occurs, ...' The fact remains that the gas in question is subject to the Natural Gas Act and the Commission's applicable regulations."
 
 
 17
 Id. at 61,635. Again, the Commission rejects Grace's textual interpretation of the phrase "effective date" but gives no reason for this new interpretation.
 
 
 18
 At most the Commission relies on alternative textual authority:
 
 
 19
 "The real question involves the proper interpretation of Section 157.40(c)(1) of the Commission's regulations relating to small producers. That section provides that small producers are authorized to make sales at specified rate levels 'to the extent contractually permitted....' "
 
 
 20
 Id. Yet this limitation, "to the extent contractually permitted," does not tell us anything about the crucial issue of whether sales prices are limited to levels contractually permitted at the time of the deliveries. On this crucial issue, the Commission succeeds only in overstating the Transco holding: "The crux of our decision in Transco is that ... a small producer is not entitled to collect the NGPA maximum lawful price under its small producer certificate unless contractual authority exists at the time of sale." Id. Repeated conclusions cannot take the place of reasoned analysis.
 
 
 21
 Nor does the May 23 order denying rehearing cure this error. Although the Commission again clearly states its new rule, it offers no explanation for the change of course: "The effect of the March 25 order is to establish a uniform policy applicable to both large and small producers, whereas under Grace's position, a separate rule would apply to small producers. See [Fed. Energy Reg. Comm'n Rep. 16 (CCH) ] p 61,047, at p. 61,083, n. 3 (1981)." May 23 Order, supra, at 61,436. This quotation typifies the Commission's approach. Far from justifying its new policy, the Commission cites to a footnote in Riddell which directly contradicts such uniformity. In that footnote, the Commission explicitly established nonuniform standards for small and large producers, saying
 
 
 22
 "A large producer in the circumstances present here would be unable to collect the rollover contract rate prior to execution of the contract because of the requirement under the Natural Gas Act and Sec. 154.94 of the Commission's Regulations to file with the Commission a notice of change in rate, including a copy of the executed rollover contract, before collecting the new rate. That requirement, however, has no applicability to a small producer like Riddell which is selling its gas pursuant to a small producer certificate."
 
 
 23
 16 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,047, at 61,083 n. 3 (emphasis added).
 
 
 24
 Finally, footnote four of Order No. 428, 45 F.P.C. 454 (1971), cited by the Commission in its appellate brief, does not mandate a different result. Footnote 4 of this 1971 order says:
 
 
 25
 "If a contract for an exempted sale of gas expires and is not extended or replaced by a new contract, the small producer must continue the sale of such gas unless the pipeline consents to abandonment or the producer obtains abandonment authorization. Moreover, in such circumstances the small producer is not entitled to collect any rate in excess of the highest rate permitted under the expired contract for the sale of such gas unless it files a notice of change in rate in accordance with Section 4(d) of the Act."
 
 
 26
 Id. at 457 n. 4. We do not consider this footnote to a regulatory explanation to rise to the status of a substantive rule. In context, it is more akin to a "general statement of policy." See Pacific Gas and Electric Co. v. FPC, 506 F.2d 33, 38 (D.C.Cir.1974) (FPC Order No. 467, 49 F.P.C. 85 (1973), not a rule). See also 2 K. Davis, supra Secs. 7:4, 7:5.
 
 
 27
 The footnote, if anything, adds to the capriciousness of the Commission's orders because, whatever weight we give the footnote, it was ignored in both the Spradling and Riddell decisions ten years later. If there was an intent in 1971 to bar retroactive rollover contracts, it was forgotten or ignored by the Commission by the time Spradling and Riddell were decided. The Commission cannot leapfrog its two holdings to the contrary to justify its present action.
 
 
 28
 In sum, we agree with Commissioner Richard's dissent in the May 23 order denying rehearing:
 
 
 29
 "[T]he Commission departs from its holdings in Riddell and Spradling without attempting to distinguish those cases and without adequate explanation for its change in policy....
 
 
 30
 Neither the Commission order denying Grace's petition nor the order denying rehearing explain the Commission's sudden shift in policy in respect to small producer rollover contracts. This is especially puzzling since the NGPA and section 157.40(c)(1) of the regulations were in effect in both cases and have not been changed. It is difficult to understand why the Commission has chosen to set aside an agreement of two parties, freely entered into, and what public interest the Commission's order is intended to serve."
 
 
 31
 May 23 Order, supra, at 61,436-37.
 
 
 32
 We can perceive some justification for the Spradling and Riddell rule: If the parties are unable to make a negotiated price retroactive to the contract expiration date, the purchaser will have an incentive to prolong negotiations during a time of rising gas prices, and a seller will have the same incentive to prolong negotiations (restrained perhaps by fear of reduced sales) during times of falling prices. Perhaps there are reasons why a contrary rule is desirable, but the Commission's orders have not stated them. We hold, therefore, that the Commission erred in its orders. We reverse and remand for proceedings consistent with this opinion.
 
 
 33
 REVERSED and REMANDED.
 
 
 
 [1]
 18 C.F.R. Sec. 157.40(a) defines the term "small producer." Grace ceased to qualify as a small producer in 1980. Grace's small producer status, however, remained effective with respect to the 1962 contract. Grace Petroleum Corp., Order Denying Petition for Declaratory Order, 30 Fed. Energy Reg. Comm'n Rep. (CCH) p 61,321 at 61,634 (March 25, 1985). See 18 C.F.R. Sec. 157.40(d)
 
 
 [2]
 A "rollover contract" is "any contract, entered into on or after November 9, 1978, for the first sale of natural gas that was previously subject to an existing contract which expired at the end of a fixed term" after November 9, 1978. 15 U.S.C. Sec. 3301(12). An "existing contract" is "any contract for the first sale of natural gas in effect on November 8, 1978." 15 U.S.C. Sec. 3301(13)
 
 
 [3]
 Grace could not discontinue its supply without first obtaining an order from the Commission permitting abandonment. See 18 C.F.R. Sec. 157.40(c)(5)
 
 
 [4]
 There are other limitations on an agency's power to overturn precedent. One is that "agencies may not impose undue hardship by suddenly changing direction, to the detriment of those who have relied on past policy." Cities of Anaheim, Riverside, Banning, Colton and Azusa v. FERC, 723 F.2d 656, 659 (9th Cir.1984)